# CHARLES WILCOX, ADMINISTRATOR OF THE ESTATE OF EDGAR MORTON, DECEASED, *v* MINNIE MORTON.

## No. 1586.

### EXCEPTIONS FROM CIRCUIT COURT SECOND CIRCUIT. HON. D. H. CASE, JUDGE.

ARGUED FEBRUARY 5, 1925.                    DECIDED FEBRUARY 17, 1925.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

EXECUTORS AND ADMINISTRATORS—*collection of assets—payments of lawful claims by widow.*

Moneys received by a widow as proceeds of cattle sold in pursuance of a contract of her deceased husband and applied by her, whether with or without the prior assent of the heirs, to the payment of just and lawful claims of creditors against the estate of the decedent, such receipts and application being prior to the appointment of any administrator, cannot be recovered by the administrator from the widow in an action against her for money had and received,—when the moneys in question are not needed for the payment of other debts of the decedent.

OPINION OF THE COURT BY PERRY, J.

This is an action at law. The essential allegations of the declaration are as follows: that one Edgar Morton died on September 18, 1922; that on November 28, 1922, the plaintiff duly qualified as administrator of the estate of said decedent; that after the death of the said Edgar Morton the defendant shipped and sold twenty-four head of cattle belonging to the estate of the decedent and received therefor, after deducting freight and transportation charges, the sum of $1,057.49; that the said sum of $1,057.49 had and received by the said Minnie Morton is the property of the estate of the said Edgar Morton "and as such should and ought to be turned over to the plaintiff and administrator of said estate"; that "there are numer-

ous claims with your administrator against the said estate and there are insufficient funds in his hands as such administrator to pay and discharge the same"; and that the plaintiff has credited the defendant with the sum of $125 paid by her for expenses of the funeral of the decedent and with the further sum of $326.67, the total of an allowance made to her by the court for her support and maintenance pending the settlement of the estate. Judgment is asked for the sum of $605.82, being the amount of the excess of the moneys alleged to have been received by the defendant over and above the credits thus allowed by the plaintiff. The answer was a general denial.

At the trial before the jury there was direct and undisputed evidence tending to show the following facts: that the decedent died intestate and left surviving him a widow (the defendant) and as his sole heirs three sons, David Morton, Edgar Morton, Jr., and Benjamin Morton; that prior to his death the decedent entered into a contract with C. Q. Yee Hop & Company of Honolulu whereby he agreed to sell and deliver to them twenty-four head of cattle which were then on the Island of Maui; that the decedent was engaged in the act of rounding up these cattle when he fell from his horse and died; that shortly after his death the three sons and the widow had a consultation on the subject and agreed, without dissent, to execute the contract thus entered into by the decedent; that in pursuance of this understanding and agreement the cattle were shipped to Honolulu and delivered to Yee Hop & Company and that David Morton, one of the sons, was in charge of the shipment and delivery; that in pursuance of the further agreement of the three sons and the widow the sum of $1,057.49, being the proceeds of the sale, was taken by David from Honolulu to Maui and there deposited in the Baldwin bank to the credit of the defend-

ant; and that thereafter the defendant used the moneys thus placed to her credit as follows:

For payment of the expenses of David's trip in
  connection with the shipment and deliv-
  ery of the cattle .....................$120.

For payment to A. Wallace, a cowboy, for serv-
  ices rendered to the decedent...........  10.

For payment to one Tuck Sang for a debt of
  decedent's for provisions purchased by
  him ...............................  159.10

For purchase of a casket for the burial of
  decedent ...........................  125.

For payment to Enos Vincent, attorney at
  law, for professional services rendered to
  the decedent ......................... 125.

For payment to the von Hamm-Young Com-
  pany of Honolulu for a debt of the dece-
  dent for repairs to an automobile........  47.20

For provisions purchased by the widow, after
  the death of the decedent, for the sup-
  port of herself and her three sons.......  25.

For payment to one Hop Wo on account of a
  debt incurred by the decedent for pro-
  visions purchased by him ..............  50.

For payment of a mortgage assumed by the
  decedent in his lifetime................ 385.

The total of the items thus paid by the defendant is $1,046.30, leaving a balance of $11.19 out of the $1,057.49 received by her from the sales of the cattle. Against this balance of $11.19 is the sum of $326.67 admittedly due her as an allowance authorized by the court for her support and maintenance pending the settlement of the estate of her deceased husband. One of the sons testified that before shipping the cattle it was agreed by the three sons and the widow that the proceeds of the sale were "to go towards maintenance of the widow and to pay whatever other small debts that my father had." The evidence of the widow was that the conclusion and agreement reached

by her and the three sons was, "what money we get to pay debts and the funeral expenses" and that the three sons "told me that the money was to pay out all the debts that father owed—some of the debts like store bills." The administrator introduced no evidence whatever tending to show either that the disposition of the moneys by the widow was other than that testified to by her or that any of the debts of the decedent paid by her were not valid claims against the estate of the decedent (aside from the mere fact of non-presentation of those claims to the administrator by the creditors in question). The plaintiff's attitude at the trial was that the disposition so made by the widow of the proceeds of the sale of the cattle was utterly immaterial, that the claims of the creditors should have been presented to the administrator and that the administrator alone was legally authorized to pay them. The jury rendered a verdict for the plaintiff for the amount claimed.

The submission of the cause by the court to the jury was in accordance with the theory of the plaintiff. The court instructed the jury, *inter alia*: "If you find, by a preponderance of the testimony in this case, that Minnie Morton, the defendant, on her own responsibility and *not* in pursuance of an agreement had with Edgar Morton, Jr., David Morton and Benjamin Morton, the only heirs of Edgar Morton, deceased, sold and delivered twenty-four head of cattle belonging to the estate of Edgar Morton, deceased, independent of any agreement had with the three sons of Edgar Morton, deceased, and without their consent received and applied the proceeds of such sale to the payment of household expenses and the payment of claims against the estate, then, in such event, I instruct you that defendant would be liable to plaintiff as administrator for the amount so received from the sale of such cattle, less the two amounts for which defendant is given credit—the

casket, $125, and widow's allowance of $326.67." In other words, under the charge as given the sufficiency of the widow's defense depended upon the consent of the heirs to her disbursements.

If the point were necessary to be decided, this court would probably have to hold that the evidence was undisputed that the three sons authorized the widow to use the proceeds of the cattle in payment of the debts of the decedent, family expenses after his death and her own allowance and, consequently, that there was no evidence sufficient to support a verdict for the plaintiff even under the instruction above quoted. However that may be, the only evidence adduced with reference to the claims paid by the defendant tends to show that they were legitimate, provable claims against the estate of the decedent. There is no evidence tending to show that any of the debts of the decedent so paid by the widow was for any reason defective or invalid as a claim against his estate. The creditors, it is true, did not present claims against the estate either within the six months' period allowed by law or at any other time but this was obviously because their bills had all been paid. Upon the undisputed evidence which was before the jury the administrator could not have done otherwise with the claims in question than the defendant did and that was to honor and pay them all. The estate as shown by the undisputed evidence has property of the value of $20,000 and the unpaid claims against it amount to only about $500. To sustain the verdict upon the present state of the evidence would be the equivalent of permitting the estate to compel the widow to make it a gift of $605.82. Irrespective of whether or not the three sons consented in advance to the application of the moneys to the payment of the debts of decedent, they, as sole heirs, have reaped the benefit of the payments made by the widow and should not now, in the absence of further evi-

dence, be permitted to compel her to pay the same sum once again.

The plaintiff's contention that because no set-off was pleaded the defense actually presented was not admissible cannot be sustained. The payments proved by the widow are not matters of set-off. The action in its essence is one for money had and received for the use of the plaintiff. The defendant admits that she received the money but says that she has already used it for the benefit of the plaintiff. This is not proof of any proper subject of set-off but is evidence admissible under the general denial.

The verdict is set aside and a new trial is ordered.

*E. R. Bevins* (also on the brief) for plaintiff.

*E. Vincent* (also on the briefs) for defendant.

