## CHARLES L. K. HUTCHISON, ADMINISTRATOR OF THE ESTATE OF LAU KIN SING, DECEASED *v.* FLORENCE T. H. LAU.

### NO. 2888.

ARGUED MAY 28, 1953.                    DECIDED JUNE 17, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY LE BARON, J.

This is an action in assumpsit by the administrator of the estate of Lau Kin Sing, deceased, to recover the sum of $4000 from Florence T. H. Lau, the deceased's widow. Issue was joined by the widow's general denial. At the start of trial, jury waived, the widow pleaded a setoff in the sum of $1500 for monies paid by her for her deceased

husband's medical, hospital and funeral expenses. After trial, the trial judge by written decision denied her plea of setoff and disregarded her evidence to support it "for the reason that this claim, if valid, is more properly a matter for the Probate Court to decide." Without considering the probative effect of that evidence he found that the administrator is entitled to recover from the widow the full sum of $4000, together with interest, attorney's commissions and costs. Judgment accordingly was entered in favor of the administrator. The widow appeals by way of exceptions.

The specification of alleged errors on which the widow relies challenges the decision on two grounds of contention. One is that the administrator is entitled to no judgment against her. The other is that, if he is entitled to one, he is not entitled to a judgment in the full sum of $4000 as entered below but only one in the sum of $2500 as the difference between $4000 and the $1500 which she paid for her deceased husband's medical, hospital and funeral expenses prior to the appointment of an administrator. The first question to be considered is one of the sufficiency of the evidence to support the judgment in the full sum of $4000, aside from any defense she may have to reduce that sum of recovery.

The undisputed evidence, together with reasonable inferences to be drawn therefrom, is that Lau Kin Sing and Florence T. H. Lau were husband and wife domiciled in Hawaii; that he had operated a business of his own for many years during which he deposited his earnings into a commercial account to his own credit with the American Security Bank of Honolulu; that, in contemplation of an immediate visit to his ancestral home in China and to provide for his personal expenses while abroad, he drew a check; that, presumably on instructions from him, his wife

with that check purchased for him at the bank $5000 worth of drafts payable to him; that the bank accepted his check on presentment and sold her the drafts which it drew upon The Chase National Bank of New York to his order; that his wife on so purchasing those drafts immediately relayed delivery to him at his place of business in Honolulu; that the bank at his express direction transferred his accumulated bank deposits to a new account to the credit of himself "and/or" his wife; that the record is not clear as to the order of sequence between the drawing of the check, the purchase of the drafts, the transfer of the deposits to the new account, but it is definite that they all occurred on the same day and that at the beginning of that day there was in excess of $19,000 credited to the husband's individual account and at the close of day in excess of $14,000 to the joint account; that he retained those drafts until his death in China, except for the ones he had cashed in the sum of $1000 before he died; that his right thereto and possession thereof does not appear to have ever been limited or even questioned by his wife during his lifetime; that at the time of his death he was possessed of the remaining drafts totaling $4000, which a volunteer as a friend of the family forwarded to the widow and at the same time billed her for her deceased husband's medical, hospital and funeral expenses in the sum of $1500; that she cashed those drafts for $4000 and from the proceeds forwarded to the volunteer $1500 worth of drafts payable to him as payment for those expenses; that thereafter probate proceedings were instituted by a daughter of the intestate and step-daughter of the widow; that as a result an administrator was appointed; that he demanded from the widow payment of the $4000 so realized by her, and on her refusal instituted the instant action in assumpsit six months after his appointment; that she answered by gen-

eral denial and plea of setoff.

The widow contends that this evidence not only proves a purchase of the drafts by her with funds withdrawn from the joint account but gives rise to a presumption "that the joint interest of the depositors follows funds withdrawn by either and negatives the idea that such withdrawals were severed from the joint estate and appropriated by the drawer to his own use." (*Ambruster* v. *Ambruster,* 326 Mo. 51 at 72, 31 S. W. [2d] 28, adopting rule laid down in *Moskowitz* v. *Marrow,* 251 N. Y. 380, 167 N. E. 506.) But as pointed out in the *Ambruster* case, on which the widow relies, "the presumption is a weak one and readily yields to parol proof of the real intention of the parties. And while it makes a prima facie case for the party asserting the joint interest, the burden of proof is on him to establish his title by a preponderance of all the evidence."

As the party asserting a joint interest in this case, the widow has failed to sustain her burden of proving her alleged title to the drafts in her husband's possession at the time of his death. She has not even established the basic premise that the drafts in fact were purchased with funds withdrawn from the spouses' joint account so as to give rise to the presumption which she urges. In correlation, the record, inclusive of her own testimony, is silent as to the character of the account upon which her husband admittedly drew his check to purchase drafts in his name from his own deposits. On this state of the record no presumption, however weak, arises that a joint interest exists with respect to the funds withdrawn and *a fortiori* none follows those funds or attaches to the drafts purchased with them. Nor would the result be different if one did arise where, as here, a withdrawal of funds from the spouses' joint account to be appropriated for the purchase of drafts in his name would be patently for his own use,

not only with her knowledge and consent but with her active participation. Indeed, she acted merely as his agent consistent with the real intention of the parties that he take from the bank at least $5000 as his separate property for traveling expenses and leave a credit of $14,000 to the joint account upon which she could draw checks in his absence. The undisputed evidence thus conclusively proves that the drafts in his possession were his separate property and on his death became assets of his estate. Needless to say, it overwhelmingly supports the judgment had the widow no other defense than that of survivorship to a joint interest. (See *Dickson* v. *Jonesboro Trust Co.,* 154 Ark. 155, 242 S. W. 57; *Hanus* v. *Jankowski,* 256 Wis. 187, 40 N. W. [2d] 573.)

The widow contends that her plea of setoff for her deceased husband's medical, hospital and funeral expenses paid prior to appointment of an administrator in the sum of $1500 should not have been denied. But her payments as pleaded are not matters of setoff. (*Wilcox* v. *Morton,* 28 Haw. 203, 208.) Nor does her plea meet the requirements of mutuality under the statute of setoff. (R. L. H. 1945, § 10088. See *Selig* v. *Chulan,* 6 Haw. 627.) The trial judge, therefore, rightly denied the widow's plea. But that does not mean that he properly disregarded the evidence of those payments in arriving at the amount of judgment by relegating her claim to the probate court where it would be barred by statute. (R. L. H. 1945, § 12022 as am.) On the contrary, the trial judge improperly did so, this court in a comparable case already having declared that evidence of the same character of payments by a widow prior to the appointment of an administrator is "admissible under the general denial" as a matter of defense to an assumpsit action by the administrator to recover monies realized by the widow from estate assets.

(*Wilcox* v. *Morton, supra,* at page 208.) Being admissible thereunder, the evidence of such payments, together with all the other evidence in this case, should have been considered by the trial judge himself as the trier of fact. It was incumbent upon him to have decided whether $1500 is a proper and reasonable sum to have been paid for the intestate's medical, hospital and funeral expenses as legitimate debts of the estate. That decision should have been "upon a consideration of all the circumstances, including the station of the decedent and the value of his estate." (*Golden Gate Undertaking Co.* v. *Taylor,* 168 Cal. 94, 141 Pac. 922, 925.) But he did not so consider and decide and justice requires a new trial in which the widow's partial defense may be properly considered. On retrial the issues should be narrowed to what is a proper and reasonable sum to be paid for those expenses in this particular estate.

Cause remanded with instructions to set aside the judgment and grant a new trial consistent with this opinion.

*C. Y. Shimamura* (also on the briefs) for appellant.

*W .Y. Char* (also on the brief) for appellee.