UNION & MERCANTILE TRUST COMPANY *v.* HUDSON.

Opinion delivered January 10, 1921.

1. APPEAL AND ERROR—TIME FOR TAKING APPEAL.—Where a demurrer to a complaint was sustained, but no judgment entered at that term, and at the following term a *nunc pro tunc* order was entered which showed that the demurrer to the complaint was sustained, and that plaintiff excepted to the judgment sustaining such demurrer, and was granted an appeal, but failed to show that plaintiff rested or elected to stand on his complaint, or that the complaint was dismissed, an appeal from a judgment rendered at a third term dismissing the complaint for want of equity was in apt time.

2. EQUITY—JURISDICTION.—Where an executor and a bank fraudulently withheld from the testator's wife a deposit in the bank in which the wife had an estate in entirety, a bill to recover such fund is peculiarly one of equitable jurisdiction.

3. COURTS—PROBATE JURISDICTION.—The probate court has no jurisdiction of contested rights and matters of litigation as to the title of property between executors or administrators and others claiming the title as against the estate of a deceased person.

4. HUSBAND AND WIFE—ESTATE BY ENTIRETY.—The statutes removing the disabilities of married women (Crawford & Moses' Dig., §§ 5574, 5577, 5580) were intended, not to destroy any rights of married women existing at common law, but to enlarge them, and do not affect estates by entirety.

5. HUSBAND AND WIFE—DEPOSIT OF JOINT FUNDS IN HUSBAND'S NAME. —Where a husband deposited in his own name funds jointly belonging to himself and his wife, without her consent, his acts constituted a fraud upon her rights, and upon his death the remainder of the deposit was held by the bank as trustee for her, as soon as the character and source of her title was brought to its knowledge.

Appeal from Independence Chancery Court; *Lyman F. Reeder,* Chancellor; reversed.

*Earl C. Casey,* for appellant.

The law of tenancy by the entirety applies to personal property and is not affected by the passage of the married women's enabling statutes. 13 R. C. L. 1106-8 and cases cited; 188 Pa. St. 33; Freeman on Co-Tenancy and Partition, §§ 62 to 68; 173 Mo. 91; 61 L. R. A. 166; 173 Mo. 91; 61 L. R. A. 166; 73 S. W. 202; Schouler on Per. Prop. (3 ed.) 191.

The courts of this State hold that the "married women's acts" are not intended to destroy the common law unity of husband and wife but merely to enlarge the privileges of the wife. 134 Ark. 167; 31 S. W. 117; 124 Ark. 167. See, also, 159 Mass. 415; 99 Wis. 388; 75 N. W. 163; 232 Pa. St. 89; 81 Atl. 145; Ann. Cas. 1912 C, 1240; 189 Mass. 563; 76 N. W. 206; 34 Am. Rep. 245; 117 Mich. 449; 13 R. C. L. 1196. These cases show that it was error to sustain the demurrer to the amended complaint. 200 Mo. 474; 98 S. W. 527; 68 Ind. 245; 34 Am. Rep. 245; 117 Mich. 449; 13 R. C. L. 1106.

*Samuel M. Casey,* for appellees.

1. The decree sustaining the demurrer should be sustained for any one of three reasons. (1) The chancery

court had no jurisdiction. (2) The facts as alleged do not show an estate by entirety in the money claimed, and (3) plaintiff by taking dower out of said fund is estopped to claim the whole fund.

The probate court had exclusive jurisdiction and chancery can not take cognizance. 34 Ark. 63; 45 *Id.* 505; 84 *Id.* 192; 74 *Id.* 520; 70 *Id.* 444.

2. The doctrine of estate by entirety can not be extended to personal property in this State. 138 Mich. 112; 136 N. Y. 61; 36 Am. St. 700; 33 Harvard Law Review 983.

3. Having elected to take dower, plaintiff can not claim the whole property. 66 Ark. 305; 31 *Id.* 580.

WOOD, J. V. G. Richardson and his wife, Willie A., owned certain lands in entirety in Independence County, Arkansas. On the first of May, 1918, they mortgaged these lands to secure a loan of $15,000. Richardson, without the knowledge or consent of his wife, deposited this sum in the First National Bank of Batesville, Arkansas, in his own name, when it should have been deposited in their joint names. Richardson died on the 13th of May, 1918. At that time there remained on deposit in the bank $8,062.23 of the $15,000. On the 28th day of May, 1918, Roy Hudson was appointed administrator of the estate of Richardson, and S. A. Ruddell, W. K. Ruddell and John A. Hinkle were his bondsmen, and the $8,062.23 remaining in the bank was placed to Hudson's credit as administrator of the estate of Richardson. Mrs. Richardson instituted this action against Hudson, as administrator of the estate of her husband, the bank, and Hudson's bondsmen, to have the bank declared a trustee and to have the money transferred and deposited to her account.

The above are substantially the facts set forth in the complaint. The defendants entered a general demurrer to the complaint. Mrs. Richardson died, and the cause was revived in the name of the Union & Mercantile Trust Company of Little Rock, the executors of her estate. At the June term, 1919, the demurrer to the com-

plaint was sustained, but at that term no judgment was entered to that effect. At the December term following a *nunc pro tunc* order was entered, showing that at the former June term the demurrer was sustained to the plaintiff's amended complaint, that plaintiff excepted and prayed and was granted an appeal. But this order failed to state that the plaintiff refused to plead further, and that the complaint was dismissed after the demurrer was sustained. At the June term, 1920, the court entered an order dismissing the plaintiff's complaint for want of equity. From that judgment is this appeal, and the transcript was lodged in this court August 27, 1920.

1. The appeal was in apt time. While the *nunc pro* tunc order of the December term, 1919, shows that the demurrer to plaintiff's amended complaint was sustained, and that plaintiff excepted to the. judgment sustaining such demurrer, and prayed and was granted an appeal to the Supreme Court, such *nunc pro tunc* order does not show that, after the demurrer was sustained, the plaintiff "rested thereon," that is, elected to stand upon his complaint, and refused to plead further. Herein lies the distinction between the case at bar and the case of *Melton* v. *St. L., I. M. & S. Ry. Co.*, 99 Ark. 433-37, upon which appellee relies. A careful reading of the opinion in that case will show that it sustains our holding that the appeal herein was in time.

2. The facts set forth in the complaint, though not skillfully pleaded, were nevertheless sufficient to state a cause of action within the jurisdiction of a court of chancery. The plaintiff below was not undertaking to correct errors and irregularities in the settlements of the administrator, or to interfere in the management of the estate of Richardson by the probate court. The allegations show that the purpose of this suit was to try the title to the funds deposited in the bank to the credit of the administrator and to have the bank declared a trustee of those funds for the benefit of Mrs. Richardson. According to the allegations, the administrator was seeking to hold and have the probate court administer as

funds of the estate of Richardson the proceeds of the loan which the plaintiff alleged had been deposited without her knowledge and consent in the name of Richardson, whereas the same should have been deposited in their joint names. She averred that Hudson and the bank had been notified that she claimed the funds. She alleged facts showing the source of her claim of title and prayed that the bank be declared a trustee.

If Mrs. Richardson had an estate in entirety in the funds after the death of Richardson, then, under the facts stated in the complaint, it would have been a fraud upon the part of Hudson, after being notified by Mrs. Richardson of her claim, to continue to claim the funds as the property of the estate of Richardson, and likewise a fraud upon the part of the bank to allow him to do so. The case, under the facts stated, is peculiarly one of equitable jurisdiction. The probate court has no jurisdiction of contested rights and matters of litigation as to the title of property between executors, or administrators and others claiming the title as against the estate of a deceased person. *Morse* v. *Sandefur,* 15 Ark. 381; *Clarke* v. *Shelton,* 16 Ark. 474; *Mobley* v. *Andrews,* 55 Ark. 222; *Fancher* v. *Kenner,* 110 Ark. 117; *Shane* v. *Dickson,* 111 Ark. 353; *Fowler* v. *Frazier,* 116 Ark. 350.

3. This brings us to a consideration of the question as to whether or not Mrs. Richardson had an estate by entirety in the funds in controversy. The question of whether there can be an estate by entirety in personal property does not seem to have been heretofore decided by this court. That Mrs. Richardson had an estate by entirety in the lands which were conveyed to her husband and herself jointly is well settled in this State. *McWhorter* v. *Green,* 111 Ark. 1; *Robertson* v. *Robinson,* 87 Ark. 357; *Roulston* v. *Hall,* 66 Ark. 305; *Branch* v. *Polk,* 61 Ark. 388; *Robinson* v. *Eagle,* 29 Ark. 202.

According to the allegations, the funds in controversy were proceeds of a loan which the lands held by entireties were mortgaged to secure, and which funds should have been deposited in the joint names of Richardson and

his wife. Our statutes enfranchising married women and virtually destroying the unity of husband and wife, so far as the separate property and rights of the wife are concerned, were not intended to, and do not, affect estates by entirety. Ch. 86, Crawford & Moses' Digest, §§ 5574, 5577 and 5580. These statutes were intended, not to destroy any estate, or restrict any right or privilege that married women had at the common law, but to enhance them. *Baker* v. *Rowland,* 114 Ark. 280; *Fitzpatrick* v. *Owens,* 134 Ark. 167; *Frost* v. *Frost,* 200 Mo. 474; *Phelps* v. *Simons,* 159 Mass. 415; *In re Myers Estate,* 232 Pa. St. 89; Ann. Cas. 1912, C. 1240; *Re Rachel A. Branberry's Estate,* 156 Pa. 628, 22 L. R. A. 594.

The funds in controversy had not, by the knowledge and consent of Mrs. Richardson, been reduced to the separate possession of Richardson, nor had they been reduced to her separate possession. He was to deposit them in the bank in their joint names, and in equity it is the same as if he had done so, and it was a fraud on her rights for him not to have done so. He was a trustee of her interests, and the bank likewise, after having knowledge of the character and source of her title, held the same as a trustee for her after Richardson's death. *Frost* v. *Frost,* 200 Mo. 474-84.

Mr. Bishop says: "If real estate is conveyed by deed to husband and wife, this creates in them a peculiar kind of tenancy known as tenancy by the entirety, and, on a dissolution of the coverture by the death of one of them, the survivor takes the whole estate. Nothing of this sort is known in respect to personal property, since the wife can not own personal property in her own right, and whatever title she has to personal property vests in the husband. If the chattel is given or sold to husband and wife jointly, the title vests wholly in him." 1 Bishop on Law of Married, Women, § 211. He cites, to support the text, *Pope* v. *Allen,* 19 Mo. 467. There are a few other authorities to the same effect. *Morrow* v. *Morrow,* 138 Mich. 112; *Matter of Albrecht,* 136 N. Y. 91, 33 Harvard Law Review, 983. On the other hand, Mr. Freeman, an equally

eminent author, challenging the views of Mr. Bishop, says: "No decision of this purport exists in England, so far as we are aware. The reports, English and American, new and old, abound in cases recognizing tenancy by entirety in all kinds of personal estate and enforcing the right of the surviving husband or wife to the entire property." Freeman on Cotenancy and Partition, § 68. He cites *Bricker* v. *Wheatly,* 1 Vern. 233; *Cowper* v. *Scott,* 3 P. Wms. 121; *Atty. Genl.* v. *Bacchus,* 9 Price 30. Counsel for appellant in his excellent brief has collated nearly all of the following authorities: *Frost* v. *Frost, supra; Phelps* v. *Simons,* 159 Mass. 415; 38 Amer. State Reports, 430; *Boland* v. *McKowen,* 189 Mass. 563; *Baker* v. *Stewart,* 40 Kan. 442; *Johnson* v. *Johnson,* 173 Mo. 91; *Parry's Estate,* 188 Pa. St. 33; *Re Bramberry's Est., supra; Fielder* v. *Howard,* 99 Wis. 388; 13 Rul. Case Law, §§ 128, 129, p. 1106; Schouler on Personal Property, § 156, p. 223; *Draper* v. *Jackson,* 16 Mass. 480; Childs, Personal Property, § 136; *Patton* v. *Rankin,* 68 Ind. 245; *Dickey* v. *Converse,* 117 Mich. 449. In addition to the above, see the very recent case (January 7, 1920) of *George* v. *Estate of Dutton,* 108 Atl. 515, where it is said: "The marital rights of the husband at common law, in the personal property acquired by his wife during coverture, are not inconsistent with the theory that estate by entirety may exist in personalty; for the wife may hold such property by virtue of a gift or bequest to her sole and separate use; or she may so hold it by reason of surrender and waiver by the husband of his marital rights therein; or, if her property consists of choses in action, the husband may not reduce it to possession within his lifetime." This case is reported with extensive notes in 8 Am. Law Reports, pp. 1014-1017.

The case of *Draper* v. *Jackson, supra,* reviews several very old cases occurring in the reign of Edward Third (1216) and Fourth (1416), and of Henry Sixth (1422). These reigns were long before the fourth year of James the First (1607), and the decisions show that tenancy by entirety could and did exist at the common

law in personal property. See Crawford & Moses' Dig., § 1432. It appears, therefore, that the great weight of authority is in accord with the statement of the law *supra* by Mr. Freeman.

4. The allegations of the complaint do not show that Mrs. Richardson was estopped by claiming or taking dower out of the funds in controversy. The vague allegations as to dower are not sufficient to estop her. It follows that the court erred in sustaining the demurrer to the complaint and in dismissing the same for want of equity. The decree is therefore reversed, and the cause is remanded with directions to overrule the demurrer.