## DICKSON *v.* JONESBORO TRUST COMPANY.

### Opinion delivered June 12, 1922.

1. HUSBAND AND WIFE—ESTATE BY ENTIRETY IN PERSONALTY.—An estate by the entirety may be created in personal property.
2. HUSBAND AND WIFFE—ESTATE BY ENTIRETY IN BANK DEPOSIT.—A bank deposit in the name of "D. and wife" *held* to create an estate by the entirety, though the name of the wife is not mentioned, and she never draws any checks against the account, and D. reserves the right to check against the account and to add to the balances from time to time.
3. HUSBAND AND WIFE—HUSBAND'S SEPARATE PROPERTY.—Where a husband, with his wife's knowledge and consent, withdrew portions of bank deposits kept in the name of himself and wife and reduced the sums withdrawn to his separate possession, Liberty Bonds and Thrift Stamps purchased therewith and notes made to him in his individual name, with his wife's consent, were owned by him alone, and not jointly with his wife as tenants by the entirety.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Chancellor; reversed in part.

*Horace Sloan* for J. S. Dickson, appellant and appellee.

An estate of tenancy by the entirety does not exist in personal property in this State. This case is distinguished from that in 147 Ark. 7, on the facts.

There was not a sufficient designation of the wife to render Sarah L. Dickson a tenant by the entirety of this fund with her husband.

Even though the widow be held to be a tenant by the entirety in the bank account, it does not follow that she is entitled to the bonds, stamps and notes, as these were the individual property of G. B. Dickson and now the property of his administrator. See 147 Ark. 7; 8 A. L. R. 1017.

The charge of fraud and collusion made against the administrator in the case in which he is appellee is a general allegation and not legally sufficient. 77 Ark. 355; 51 Ark. 1; 45 Ark. 505; 42 Ark. 186; 34 Ark. 631; 33 Ark. 727.

A court will not reopen a judgment when the application does not disclose some defense on the merits. Crawford's Digest, "Judgments" secs. 46, 100. On the ground of fraud, such fraud must have existed in the procurement of the decree, and the existence of fraud in the original cause of action is insufficient to vacate a decree in equity. 90 Ark. 261. Here no fraud is alleged or pointed out. Only the administrator had the right to bring the suit. 45 Ark. 299; 35 Ark. 289.

*Gautney, Caraway & Dudley*, for Crowder *et al*, appellants.

Under secs. 1101 and 1102 C. & M. Digest, the grandchildren having an interest in the property should have been allowed to become parties. See also 49 Ark. 100; 74 Ark. 54; 86 Ark. 304.

An estate by the entireties in the funds in bank was not created. There is no presumption that such a result is intended, but there must be something said or done at the time of making the deposit to call for such a rule, or there must be a statute to that effect. See 148 N. Y. S. 302; 146 Pac. 647; 3 R. C. L. 527, sec. 155; 128 A. S. R. 543; 51 A. S. R. 473; 17 A. S. R. 524.

*Arthur L. Adams,* for appellee Sarah L. Dickson.

The estate of tenancy by the entirety in personal property exists in this State. 147 Ark. 7; 8 A. L. R. 1017; 13 R. C. L. 1106, sec. 129; 21 Cyc. 1197.

Making the deposit in the name of G. B. Dickson and wife as fully identifies Sarah L. Dickson as if her name had been used. Had Mr. Dickson intended to be the sole owner of the deposit he would have used only his own name. Freeman on Cotenancy and Partition (2nd Ed.), sec. 68. Changing the form of the property from cash deposit of bonds, notes, etc., taken in the name of one, does not extinguish the rights of the other tenant. 8 A. L. R. 1014; 7 Tenn. Civ. A. 277; 147 Ark. 7. The wife must have known of such intent and acquiesced therein.

The intervention of Crowder *et al.* was properly denied because jurisdiction of the lower court had been terminated by perfecting the appeal to this court before any action was taken by them. 2 Stand. Ency. Proc. 324; 72 Ark. 475; 88 Ark. 391; 107 Ark. 415; 150 U. S. 31; 29 Ark. 85.

A deposit by a husband to the credit of himself and wife creates a presumption of tenancy by the entirety. 153 Mo. 586; 108 N. Y. Supp. 493, 87 N. E. 1130.

SMITH, J. On December 31, 1921, the Jonesboro Trust Company filed its bill of interpleader against J. S. Dickson, as administrator of the estate of G. B. Dickson, and Sarah L. Dickson, the widow of G. B. Dickson. On the same day the Bank of Jonesboro filed a similar bill. The administrator filed an answer, as did also the widow; and each claimed the funds there described. On January 6, 1922, these causes were consolidated by consent of parties and were heard on an agreed statement of facts, from which we copy the following recitals: G. B. Dickson died intestate November 24, 1921, and was survived by his widow and their sons and by the children of a deceased son and two deceased daughters. On November 28, 1921, J. S. Dickson, a son, was appointed and quali-

fied as administrator, and is now serving as such. G. B. Dickson and Sarah L. Dickson were married in 1886, and all of G. B. Dickson's children were born of this union.

For a great many years prior to the death of G. B. Dickson a general deposit bank account was kept in the Bank of Jonesboro in the name of "G. B. Dickson and wife." During the lifetime of G. B. Dickson checks drawn on this account and signed "G. B. Dickson" were honored. At the time of the death of G. B. Dickson the amount of this general deposit account in the Bank of Jonesboro was $5,526.87.

On March 12, 1918, G. B. Dickson withdrew from the Bank of Jonesboro the sum of $5,000 and deposited this amount in the Jonesboro Trust Company as a general deposit to the credit of "G. B. Dickson and wife." Other deposits were made to this same account from time to time, and certain withdrawals from the account were also made. At the time of the death of G. B. Dickson the amount of this general deposit in the Jonesboro Trust Company was $6,992.94.

The Jonesboro Trust Company had in its possession certain Liberty bonds and Thrift stamps which were purchased from time to time prior to the death of G. B. Dickson and were all paid for by checks drawn by and signed "G. B. Dickson" on the bank deposits in the Bank of Jonesboro and in the Jonesboro Trust Company, both of said deposits being, as above stated, in the name of "G. B. Dickson and wife." The bonds and stamps are all payable to bearer and negotiable by delivery. Said bonds and stamps were delivered to the bank for safe-keeping, without any designation as to whether "G. B. Dickson" or "G. B. Dickson and wife" were the owners thereof. Interest collected from time to time on the Liberty bonds was deposited by G. B. Dickson during his lifetime in the Jonesboro Trust Company in the deposit account above referred to as being in the name of "G. B. Dickson and wife."

The trust company also had in its possession two notes payable to the order of G. B. Dickson, both being executed by his sons, and representing money they had borrowed from their father. The money represented by the notes was advanced on checks drawn on the Bank of Jonesboro and payable to the order of E. F. Dickson, and were paid by said bank out of the joint bank deposit held by said bank in the name of "G. B. Dickson and wife." G. B. Dickson did not have any interest in any other bank account in the Bank of Jonesboro except the one made and kept in the name of "G. B. Dickson and wife."

All funds forming the bank deposit accounts, before being deposited in said account of "G. B. Dickson and wife," were the earnings of G. B. Dickson, and not the separate property of his wife, nor did they comprise any portion of her separate estate. The bank account in the Bank of Jonesboro was started over thirty years ago in the name of "G. B. Dickson and wife". An indeterminable part of the bank deposits in controversy represents the remainder, including interest and profit accumulations on the deposits so made from time to time.

On this agreed statement of facts the court, on January 6, 1922, a regular day of the January 1922 term, adjudged that the widow, as the surviving tenant by the entirety, is the sole and exclusive owner of the bank deposits, and also the bonds and stamps and notes. From this finding and decree the administrator, who claimed the title to the property described for the benefit of the estate, prayed and was granted an appeal to this court.

On March 10, 1922, the same being an adjourned day of the January 1922 term of court, the grandchildren of G. B. Dickson filed an intervening petition, in which they alleged their relationship to G. B. Dickson, deceased, and alleged that J. S. Dickson, the administrator, and Sarah L. Dickson, the widow, had fraudulently colluded together for the purpose of enabling Sarah L. Dickson to claim said personal property and of procuring the de-

cree awarding the personal property to her. This petition also alleged that Sarah L. Dickson was old and infirm and without business experience, and that she had no knowledge of the filing of the complaints herein or of the rendition of the decree until after the same had been rendered. That prior to the death of G. B. Dickson he had made advances to his sons who survived him in the sum of $15,000, and that said sons had control of their mother and are inducing her to set up a claim to the personal property in order to defeat petitioners in their claim to their pro rata part thereof as heirs of G. B. Dickson, and will induce her to make a will excluding her grandchildren from participation in her estate, and that said grandchildren had no notice of this proceeding until after the rendition of the decree herein.

On March 10th this motion coming on to be heard, the administrator and widow filed responses to said petition; and the court denied the petition of the grandchildren to be made parties to the litigation, and they have appealed from that order.

We have therefore two appeals before us, that of the administrator from the original decree, and that of the grandchildren from the order of the court refusing to reopen the decree and make them parties to the litigation.

A number of questions of pleading are discussed, which, in our view of the case, we find it unnecessary to decide. We may treat the grandchildren as having properly made themselves parties to this litigation, and we may assume they have shown the influence of the sons over the widow, although that fact was denied in the response which she filed in the court below; yet it is not shown that the agreed statement of facts upon which the cause was submitted omits any material fact or contains any statement which is not true. The showing is not made that the administrator is not defending the interests of the estate faithfully and efficiently, and the case may be finally decided on its merits.

It is admitted that ordinarily the title to the personal property would vest in the administrator for purposes of administration; and the administrator has appealed from the order of the court vesting title to the personal property in the widow.

Treating all parties in interest as having properly made themselves parties to this litigation, it may be said that the verity of the agreed statement of facts has not been impeached. The grandchildren allege that advancements were made to their uncles by their grandfather, and that their uncles have an undue influence with their grandmother, and will induce her to prefer her children to her grandchildren in the disposition of her estate. But these allegations, if true, cannot arrest or alter the devolution of the property, the controlling facts in relation thereto as recited in the agreed statement of facts being unchallenged.

The question, therefore, to be decided is whether the court below properly decreed the widow to be the owner as surviving tenant by the entirety of the property in litigation.

There is much contrariety in the adjudged cases as to whether an estate by entirety can exist in personal property; but this court, in the case of *Union & Mercantile Trust Co.* v. *Hudson,* 147 Ark. 7, after a careful consideration of the authorities and of the adjudged cases on the subject, announced the law to be that such an estate can be created and can exist in personal property in this State.

It is argued that the facts recited in the agreed statement do not evince an intention to create an estate by the entirety. We think they do. The name, Sarah L. Dickson, does not appear with that of G. B. Dickson; but G. B. Dickson's wife name does appear as one of the persons for whose benefit the deposit was made. Dickson was never married but once, and there is no question about the identity of his wife. Deposits made in the name of "G. B. Dickson and wife" as certainly iden-

tify her as would deposits in the names of G. B. Dickson and Sarah L. Dickson. *Parrish* v. *Parrish,* 151 Ark. 161. It is shown that Mrs. Dickson never drew any checks against this account; but no effort was made to show that such checks would not have been paid. The testimony, as we understand it, shows an intention on the part of Dickson to create an estate by entirety in his bank balances; that his balances at any time should be so owned. He reserved and exercised the right to check against and to add to these balances from time to time; but the balances, whatever they might be at any particular time, belonged to "G. B. Dickson and wife," and the balances were therefore owned by them as tenants by entireties.

G. B. Dickson from time to time withdrew by check portions of the bank deposits, and the sums thus withdrawn were, with the knowledge and consent of his wife, reduced to his separate possession. *U. & M. Trust Co.* v. *Hudson,* 147 Ark. 12. The estate by entirety was thus destroyed in the funds so reduced to possession by Dickson, and as he took the title to the bonds, stamps and notes in his individual name with his wife's consent, the court erred in holding that the bonds, stamps and notes were owned by Dickson and his wife as tenants by entirety.

It follows therefore that the decree of the court awarding to the wife the bank balances as surviving tenant by entirety is correct, and will be affirmed; but the decree so adjudging the title to the bonds, stamps and notes will be reversed and judgment entered here in favor of the administrator.