BLACK *v.* BLACK.

4-5691                                    135 S. W. 2d 837

Opinion delivered January 8, 1940.

*Miles & Amsler,* for appellant.

*Beaumont & Beaumont* and *C. Hamilton Moses,* for appellee.

SMITH, J.   W. G. Black, who departed this life April 3, 1939, was survived by Ida B., his widow, who was his second wife, by whom he had no children, and by a son

and daughter, born of his first marriage. In addition to his home, he owned two other pieces of city real estate. He had, at the time of his death, a cash balance in his bank checking account, of $613.86, and, in addition, he had $3,790.00 in cash in a safe deposit box, and this litigation involves those cash items.

Black had made a will naming a niece as executrix, but the will had been destroyed. For a time he kept his checking account at the bank in his individual name, but he had changed the account to the names of "Mr. and Mrs. W. G. Black," and this account stood in their joint names at the time of Black's death. It appears that Mrs. Black had made no deposits to the credit of this bank account, nor had she drawn any checks against it, but her authority to have done so is conceded.

On October 26, 1934, Black leased a safe deposit box from W. B. Worthen Company, Bankers, in his individual name as lessee, and on the lease this indorsement was written: "In the event of the death of Mr. Black, any one entering the box must be accompanied by Mrs. Mary E. Beaumont (a niece)." It was this niece who had been named as executrix in the destroyed will. Following this indorsement there was written: "Change this to Mrs. Black." Lines were drawn through the name "Mrs. Black," and there followed on the lease this notation: "After W. G. Black's death he wants his wife, Daughter & Son to be present when box is opened 3/10/37 (Signed) W. G. BLACK."

On March 12, 1937, a new lease was taken to the safe deposit box in the names of W. G. Black and Mrs. W. G. Black, and under this lease either lessee had the right of access to the box in the absence of the other. The lease signed by both Mr. and Mrs. Black contained a provision reading as follows: "In case the Lessees are joint tenants, including husband and wife, it is hereby declared that all property of any kind at any time heretofore or hereafter placed in said box is the joint property of both lessees and, upon the death of either, passes to the survivor subject to inheritance tax laws. Each of the

lessees shall have full access to and control of the contents of said box without further authority. The lessor shall not be liable, in the event that property belonging to the joint tenants having access to said box be misappropriated by one or more of those having access. Each or all of the lessees may appoint a deputy to have access to or surrender the box.''

A certificate appended to this lease was signed 5/9/39 by Mrs. Black, which recites that the contents of the box had been safely withdrawn and that the box had been surrendered.

Shortly after the death of Mr. Black, his widow, with the bank's approval, checked out the bank balance and withdrew the currency from the box, and this was done although Black's son and daughter had, after their father's death, given the bank written notice not to permit that action. Thereafter the son and daughter filed this suit in the chancery court, praying that Mrs. Black be restrained from wasting or using this money, and an order was made by the chancery court requiring Mrs. Black to deposit in the registry of the court the $3,790 found in the box. She was permitted to retain the $613.86 bank deposit subject to the outcome of the litigation.

Both cash items are claimed by the widow as surviving tenant by the entirety, but the court found that an estate by the entirety had not been established by the testimony and dismissed the widow's cross-complaint praying that relief as being without equity, from which decree is this appeal. The distribution of the estate was postponed subject to the outcome of the appeal.

In addition to the $3,790 in cash, Mr. Black had placed in the box certain tax deeds, tax receipts, abstracts of title, and other valuable papers. He had also placed in the box a letter, in his own writing, dated January 27, 1938, addressed ''To My Wife, Daughter and Son.'' He wrote letters both to his son and daughter advising them of this letter in the box and explaining why he had written it.

In this letter, found in the box, Mr. Black stated that he had "done away with the will" in which his niece had been named as executrix, "or any other documents or will heretofore made by me." The remainder of the letter reads as follows:

"It is my wish that all three of you abide by the provisions of this letter, being my wishes and instructions, as I believe that all three of you are honest and loyal and will comply herewith as it is my sincere wishes to all concerned.

"I want all of my funeral expenses paid out of the estate. I give, devise and bequeath to my wife, Ida B. Black, for her natural life, one third of my real property, except as hereinafter specified, it being understood that she is to have and possess for her residence during her natural life my residence at 2308 West 11th Street, Little Rock, Arkansas, providing that the said Ida B. Black remains single after my death, but should she remarry, it is my wish that the aforesaid property no longer remain as her place of abode unless same is agreeable to my son and daughter. The expense of upkeep of my real property is to be equally borne by my wife, son and daughter.

"I give and bequeath to my son, Victor R. Black, one-third interest in all my real property except as hereinafter specified.

"I give to my daughter, Laura Jean Kersey, one third of all of my real property except the 12th St. property, which should I not sell during my lifetime, I give her personally, independent of other property, there will be found in my vault box a deed, deeding the last named property to her.

"I give to my grandson, Victor Rukins Black, Jr., my watch, and my masonic emblems, which are to be kept by Victor R. Black, Sr., who is to give my watch to the Victor R. Black, Jr., when he is 25 years of age and my masonic emblems to be given him when he is entitled to wear them.

"It is my wish that out of my personal property, that my funeral expenses first be paid and the balance

to be divided equally between my wife, Ida B. Black, daughter, Laura Jean Kersey, and Victor R. Black, Sr., share and share, alike.

> "Signed W. G. Black
> "Witnesses:
>> "W. S. Rogers
>> "Opal H. Adams
>> "Sam J. Spitzberg, J. P."

The letters to the son and daughter confirmed the disposition which Mr. Black asked to be made of his estate as stated in the letter copied above, it being explained in the letters to both son and daughter that it was desired to save the expense and to avoid the delay incident to an administration upon the estate. Mr. Black owed no debts at the time of his death, and his estate owed only his funeral expenses amounting to $353.

The undertaker who buried Mr. Black was permitted to testify that Mr. Black arranged with him for his funeral, whenever it should occur, and directed that all expenses incident to the funeral should not exceed $400. and Mr. Black stated to him that this item would be paid from a checking account which Mr. Black had at the Worthen bank.

When Mrs. Black found the letter in the box, she filed it for probate as a will, but she has not relinquished her claim to the money as surviving tenant by the entirety, and the letter does not appear to have been probated as a will.

This case involves no question arising out of any contract between the husband and the wife, nor does it present any question of a trust relation. All the money was at one time the sole and separate property of the husband, and the question for decision is, What interest in the money has the husband given his wife? We think this question must be determined by ascertaining Mr. Black's intention in opening and carrying his checking account in the names of himself or wife and in depositing the money in a safe deposit box which had been leased to him and his wife jointly.

That an estate by the entirety may be created in personal property was expressly decided in the case of *Union & Mercantile Trust Co.* v. *Hudson,* 147 Ark. 7, 227 S. W. 1; and that holding was reaffirmed in the case of *Dickson* v. *Jonesboro Trust Co.,* 154 Ark. 155, 242 S. W. 57.

This Dickson case is cited and relied upon by both parties to this litigation; but each attempts to distinguish this case from that one under the facts.

There, a bank account, kept in the name of Dickson and wife, was held to have created an estate by the entirety in the bank deposit, but that, when the husband, with the wife's consent, had withdrawn portions of the deposit and had reduced the sums withdrawn to his separate possession by buying bonds and stamps and taking notes in his individual name for portions of the money withdrawn and loaned by him, with his wife's consent, the estate did not exist in the assets thus acquired by the husband. It was said that the estate by entirety was destroyed in the funds so withdrawn and reduced to separate possession of one of the tenants, but that the estate continued in so much of the bank account as had not been withdrawn and reduced to the separate possession of one of the tenants. That principle applies here as to the bank account. Deposits made by either spouse to this joint account would have become part of an estate by the entirety, and would have continued so to be unless and until one spouse or the other withdrew a portion of the deposit and reduced it to a separate possession, in which event the estate would have continued only in so much of the account as had not been withdrawn.

We conclude, therefore, that Mrs. Black owned the bank deposit as surviving tenant by the entirety.

But a different principle is applicable to the contents of the safe deposit box. Appellant insists that the recital contained in the contract of lease of the box, hereinabove quoted, is conclusive of the common ownership of the contents of the box. But we do not think

this was the purpose or the effect of that provision of the lease. Its obvious purpose was to protect the lessor, who could not know what money or things of value would be placed in the box, nor by which of its tenants; nor would it know by which of the tenants withdrawals were made. The lessees were, therefore, declared and agreed to be, as between themselves and the lessor, joint tenants of the box and owners of its contents, so that it became and was unimportant, so far as the lessor was concerned, which tenant made deposits or withdrawals. Each tenant was given the right to deposit objects in the box and to remove them, and the lease contract has no relation to, or bearing upon, the question of owner ship as between the tenants themselves.

If it be said and conceded to be true that there was a presumption of ownership in favor of the surviving lessee of the box, this was a mere presumption, which would not prevail in the face of testimony to the contrary. The question of the presumption as to ownership of property in a safe deposit box is the subject of the annotator's note to the case of *Re Estate of Alphonse Wohleber, Deceased,* 320 Pa. St. Rep. 83, 181 Atl. 479, appearing in 101 A. L. R. 829.

In a headnote to this decision by the Supreme Court of Pennsylvania it is said that "The fact that a safe deposit box was leased in the names of both the husband and the wife, either or the survivor of them, is not of itself sufficient to establish a tenancy by the entireties, with right of survivorship, of securities found therein after the death of the husband, where there is evidence to show that the securities were in fact owned by the husband."

The annotator's note upon this and other cases which the author cites is:

"As against the contention that the taking of a safe deposit box in the name of one 'or' another made the parties joint tenants, equally entitled to the property contained therein, and that upon the death of one the title vested in the other, the court in *Mercantile Safe Deposit Co.* v. *Huntington* (1895) 89 Hun 465, 35 N. Y.

S. 390, said that all that could be deduced from the way in which the box was rented was that it was the intention of the parties that either might qualify himself to have access to the safe; that it did not, by any means, determine the ownership of the contents of the safe, or justify a conclusion that there was a joint ownership in the property contained therein, with a right of survivorship. The court concludes: 'We think it would be a proposition which would somewhat astonish the renters of boxes in safe deposit companies if it should be held that, when two combine to rent a safe, the presumption would be that there was a joint ownership in all the property contained therein, even though the names of the renters were disjunctively associated.' This decision was cited in *Gilkinson* v. *Third Ave. Rd. Co.*, (1900) 47 App. Div. 472, 63 N. Y. S. 792, as holding that the joint ownership of a box indicates nothing as to the ownership of the contents, and that all that could be inferred from the fact of ownership was 'the intention of the parties that either might qualify herself to have access to the box.' And see Re *Brown*, (1914) 86 Misc. 187, 149 N. Y. S. 138 (affirmed without opinion in (1915) 167 App. Div. 912, 151 N. Y. S. 1106, which is affirmed without opinion in (1916) 217 N. Y. 621, 111 N. E. 1085), to the same effect, the court refusing to recognize any right of survivorship of the wife in securities that belonged to her husband, when they were put into the box held by them as joint tentants with right of access in each in case of the death of either." See, also, the annotated case of *Cleveland Trust Co.* v. *Scobie*, 114 Ohio St. 241, 151 N. E. 373, 48 A. L. R. 182.

We digress at this point to comment upon § 727a, Pope's Digest, which appellant cites and relies upon as vesting title in her to the bank deposit. This section reads as follows: "When a deposit shall have been made by any person in the name of such depositor and other person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such per-

sons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the person so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by anyone of such joint tenants not to pay such deposit in accordance with the terms thereof."

While we think and hold that the widow has title to the bank deposit as surviving tenant by the entirety, we do not ascribe her title to this section of the statute. It will be observed that the application of this statute is not limited to deposits of husband and wife, but applies to joint deposits of any two persons, and was, we think, passed for the protection of the bank in which the deposit was made. It permits the bank to pay out the deposit in accordance with the apparent intent of the depositors, and protects the bank in doing so; but such withdrawals of the deposit, or portions thereof, must be made "prior to the receipt by said bank of notice in writing signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof." The statute effects no investiture of title as between the depositors themselves, but only relieves the bank of the responsibility and duty of making inquiry as to the respective interests of the depositors in the deposit until one of the joint tenants shall give notice in writing that the joint ownership has been dissolved.

We think the letter found in the box, hereinabove copied, which was not addressed nor delivered to the bank, did not destroy the estate by the entirety in the deposit, as this estate, after its creation, could have been destroyed only by the act of one tenant or the other withdrawing the deposit, in whole or in part, by checks upon it, which the bank would have been required to honor, and after the reduction of the money withdrawn to the

personal and individual use of the tenant who had withdrawn it, as was done in the Dickson case, *supra*.

But an estate by the entirety was never created in the money placed in the safe deposit box. Any presumption that this money had become a joint estate is completely refuted by the letter indicating a contrary intention. The money belonged to Mr. Black, and he had the right to place it in the box, to which he had given his wife access as a joint lessee of the box, without creating an estate by the entirety in the money. It was not placed there for that purpose, and such estate never existed in the money in the box.

We concluded, therefore, that the court below was correct in holding that Mrs. Black did not acquire title to the money in the box as surviving tenant by the entirety; but we are of opinion that she did so acquire title to the bank deposit.

As the distribution of this estate has been suspended pending this appeal the decree of the court below will be modified to the extent indicated, and the cause will be remanded for further proceedings not inconsistent with this opinion.

BAKER, J., dissents from the holding that the widow owns the bank deposit as surviving tenant by the entirety.