ELLIE PORTER, EX'X *v.* CHARLES TRAINOR
AND ED CAMPBELL, EX'RS

5-4370                                    420 S. W. 2d 860

Opinion delivered November 27, 1967

*Eugene L. Schieffler*, for appellant.

*John L. Anderson* and *Patrick Reilly*, for appellees.

GEORGE ROSE SMITH, Justice. At David Porter's death on May 18, 1964, he held two promissory notes of $2,500 each, executed by James Carter and payable to David Porter alone. David was survived by his widow, Elizabeth Trainor Porter. The question here is whether the two notes, although payable to Porter alone, were actually owned by the couple as a tenancy by the entirety, owing to the fact that they were given for money that Porter withdrew from a joint bank account and lent to Carter. The probate judge found that there was in fact a tenancy by the entirety in the notes.

The proof is so meager that it may be quickly summarized. In 1960 the Porters had about $14,000 on deposit in a joint account in a West Helena bank. It is fair to say that both spouses had contributed to the account, but there is no way of determining what each one's contribution was (assuming that fact to be relevant). In July of that year David lent $5,000 to James

Carter, drawing a check upon the joint account for the advancement and receiving in return from Carter the two notes payable to Porter, secured by a real estate mortgage.

Porter died testate almost four years later, in May of 1964. We attach no importance to the fact that his executrix, the appellant, did not inventory the notes as a part of his estate. Porter's widow, prior to her own death on March 18, 1966, had made no move toward recapturing the proceeds of the notes, which Carter paid off after Porter's death. Later on, however, the executors of Mrs. Porter's estate filed a motion in her husband's administration proceeding, asking that the proceeds of the notes be declared to be the proprety of Mrs. Porter's estate. This appeal is from an order granting that relief.

We think the court made a mistake. Only two of our earlier cases need be mentioned. In *Union & Mercantile Tr. Co.* v. *Hudson,* 147 Ark. 7, 227 S. W. 1 (1921), the husband, only 12 days before his death, wrongfully took funds belonging to him and his wife and deposited them in a bank account in his name only. We held that his conduct was a fraud upon his widow's rights and that the funds belonged to her, as the surviving tenant by the entirety. By contrast, in *Dickson* v. *Jonesboro Tr. Co.,* 154 Ark. 155, 242 S. W. 57 (1922), we held that where the husband, "with the knowledge and consent of his wife," withdrew funds from a joint bank account and used them to purchase securities payable to bearer, the tenancy by the entirety was destroyed, so that the wife was not entitled to the securities upon her husband's death.

The controlling rule is so clear that we see no serious problem in the case at bar. There is no persuasive proof that David Porter defrauded his wife in writing a $5,000 check upon their joint account almost four years before his death. Counsel for the appellees argue

with some ingenuity that the transaction was actually a renewal of an earlier mortgage debt payable to both Mr. and Mrs. Porter, but if that were so there was no reason for Porter to advance fresh funds instead of merely renewing the old debt. When we recall that the loan to Carter was made almost four years before Porter's death, and that his wife had access to the bank's records of the account, there is hardly even a plausible reason to suppose that Porter secretly defrauded his wife and concealed his wrongdoing until his death. Fraud must be proved.

In reaching our conclusion we have taken into account, as of course we should, the soundness of the precedent that is being laid down for the future. In our present-day society we know that millions of married couples utilize the convenience of a joint bank account, which under our law is a tenancy by the entirety. We also know that most husbands and wives trust each other, confide in each other, and conduct themselves with honesty and with honor in the management of their property. It would be altogether undesirable to permit the rival heirs of the two spouses (who are the real parties in interest here) to reach far back into the past in an effort to raise a bare suspicion that one spouse may have cheated the other in the disposition of funds jointly owned. That sort of posthumous litigation is decidedly to be discouraged.

Reversed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result and essentially agree with the basis for reaching it. I also agree that the record is quite meager, particularly with reference to the key issue. To me the key issue is whether the notes made payable to David Porter were made and accepted with the *knowledge* or *consent* of the wife. The rule that the destruction of a

tenancy by the entirety is accomplished by the unilateral act of one of the tenants when the other has knowledge thereof and consents thereto is clearly established in Dickson v. Jonesboro Trust Co., 154 Ark. 155, 242 S. W. 57. This rule was so essential to that decision that the opinion establishes the converse of that rule, i. e., that act of one of the tenants when the other has knowledge edge or consent of the other does not destroy the tenancy as between the parties.[1]

The inference may be drawn from the majority opinion that *fraud* on the part of the tenant withdrawing funds from a joint bank account held as a tenancy by entirety is essential to the retention of any interest by the other tenant after withdrawal. The primary importance of the finding of fraud in *Union & Mercantile Bank v. Hudson,* 147 Ark. 7, 227 S. W. 1, is that a third party bank was involved. Proof of fraud was essential to impress a trust on funds in his hands. It was alleged that the bank participated in the act of the administrator of the husband in treating the funds deposited in the husband's name as an asset of his estate, without the knowledge or consent of the wife, even after notice from the wife that she claimed the funds. While the court did say that it was a *fraud* on her rights for the husband to have deposited the proceeds of a loan on lands held by the entirety without the knowledge or consent of the wife and that his actions constituted him a trustee of her interests, the essence of this statement is the rule in the *Dickson* case. So, even in the light of the *Hudson* case, the only real issue is whether Mrs. Porter had knowledge of, or consented to, the transaction as handled.

I believe that two statements made in the majority opinion are unwarranted, but I do not consider them to be determinative of the issues. I do not agree that the failure of the executrix to list the note in the inventory

---

[1] Clearly the rights of third parties are not involved. If they were, perhaps a different result would be reached.

of the estate is of no importance. The husband's executrix, appellant here, admitted that she had seen the deed of trust securing the note before she made the inventory she later filed. Nor do I think that the declaration that the wife had access to the statements of the joint bank account is supported by the evidence. There was a petition by the wife to require the executrix to turn over to her the statements of the joint bank accounts. The basis of this request was her statement that she was claiming certain of the assets as her own property. Her mere access to the statements of the accounts is not of controlling significance, however. It is entirely plausible to believe that she knew of the loan and of the source of the funds loaned but did not know that the notes were made payable to the husband alone.

In spite of the lack of substance in these statements of the majority, I would reverse the case. I think that, when the executrix included this note as an asset in her accounting, the appellees had the burden to establish the title of their decedent (the widow) by a preponderance of the evidence. This accounting was filed several months prior to the death of the widow and the widow herself never questioned this item.

Since the asset in question was not listed in the inventory, having first appeared in the final accounting of the executrix, it was permissible for the personal representatives of the widow to file objections to this item. Ark. Stat. Ann. § 62-2808 (Supp. 1967). Upon hearing, there was a presumption that the notes were the property of the husband since they were made payable to him. *Landis* v. *Landis,* 343 Pa. 252, 22 A. 2d 908; 11 C.J.S. 91, Bills & Notes, § 659; 12 Am. Jur. 2d 214, Bills & Notes, § 1188. While this presumption alone is sufficient to place the burden of proof on an adverse claimant, appellees also bear the burden of sustaining an objection to the accounting of the personal representative based on a claim of ownership adverse to the estate. *In re Kellas Estate,* 38 N.Y.S. 2d, 197. This authori-

ty seems to be more than slightly persuasive because its result is based, at least in part, upon the New York rule that the adverse claimant has the burden of proof in a probate discovery proceeding. We have also held that in a hearing of a probate discovery proceeding, a widow who asserted an adverse claim to certain notes made payable to her and her husband, of which she had possession but had assigned to him, had the burden to establish her claim to ownership based on invalidity of the assignment. *Hartman* v. *Hartman*, 228 Ark. 692, 309 S. W. 2d 737. I consider this decision authority for saying that an adverse claimant in probate court has the burden of proof under the circumstances prevailing here, regardless of the stage of the proceedings at which the question arises.

I do not believe that the inferences to be drawn from the meager evidence offered by appellees are sufficient to sustain this burden of proof. On the contrary, inferences to be drawn from the relationship of the parties and other factors hereinabove set out clearly preponderate in this case. Strong inferences against the widow's executrix may be drawn from the fact that the note was four years old and that Mrs. Porter took no affirmative steps to question the ownership of the note even after the accounting was filed, which was after the court granted her petition to have access to the bank statements.

I do not concur in some of the reasons given by the majority for reaching this result, but I would reverse the lower court on this failure to meet the burden of proof.