SEDERLUND, Appellant, vs. SEDERLUND and others, Respondents.

*March 14—April 11, 1922.*

*Deeds: Conveyance by parent to child: Fraud on wife subsequently married: Descent and distribution: Transfers by husband to avoid wife's rights.*

1. Deeds executed by a father to his children six years prior to his death and actually delivered to them, who handed them back to the father for safe-keeping, are valid as against the father's second wife, with whom he did not become acquainted until two years after the execution of such deeds, but who claimed the deeds were fraudulent as to her dower and homestead rights, though the father retained possession of the lands or leased them to his children.
2. A deed containing a provision that the conveyance was to take effect in the future upon the happening of a particular event, such as the death of the grantor, is valid; and in this case there was a completed delivery, transferring the title to the children, which could not be divested except by a transfer from them or one resulting by operation of law.
3. A wife has no vested or *quasi*-vested right in the husband's personal property during his lifetime, and he may dispose thereof voluntarily, though for the purpose of defeating the wife's right as widow, provided the disposition is not indicative of some other fraud on her than that arising from his absolute transfer of property to avoid her having an interest therein after his death.

4. Where a husband makes a colorable transfer of his personal property to another under such circumstances as would in law still leave the title in himself, the transfer will be deemed fraudulent as to the wife's right as a widow, and may be set aside at her instance.

5. During coverture the husband owes the duty of reasonable maintenance and support towards his wife, and a transfer of his personal property for the purpose of avoiding such obligation will be set aside during the lifetime of the husband at the instance of the wife.

6. A husband's transfer of his personal property, representing the earnings of himself and his former wife and their children, to such children at a time when he was able to be about and to transact business, though suffering from an incurable disease, is valid as against his second wife, to whom he had been married only a short time, in the absence of proof as to undue influence and in view of the fact that he had transferred a portion of the property to the wife.

APPEAL from a judgment of the circuit court for Polk county: W. R. FOLEY, Circuit Judge. *Affirmed.*

The appeal is from a judgment dismissing the plaintiff's complaint, with costs.

The plaintiff, the widow of one S. A. Sederlund, began this action against the defendants, four of his children by a prior marriage, to set aside certain transfers of real estate and assignments of personal property made by the deceased for the benefit of said children, and to recover dower and homestead rights in said real estate and the widow's distributive share in the personal property.

An examination of the record discloses the following facts, which are also substantially found by the court in its findings:

That in the year 1912 Sederlund, then a widower, was the father of nine children, the four youngest of whom were respectively of the following ages: *Olga* 8, *David* 12, *Ruth* 17, and *Carl Alfred* 22. At that time he went to Grantsburg, the county seat of an adjoining county, and had the register of deeds of such county prepare legal conveyances of all of his real estate, consisting of 240 acres of land, to

said four children, as follows, to wit: To *Carl* eighty acres; to *Ruth* eighty acres; and to *David* and *Olga* eighty acres. The deeds were then executed and handed to the children, who took them home and then delivered them to the father for safe-keeping, the latter keeping them in his safe. After this the deceased continued to occupy the lands or leased them to his boys and paid all taxes. There is evidence that there was an understanding at the time the deeds were made that the father would act as the guardian for the children and would look after the real estate during his lifetime.

On or about the 28th day of November, 1917, Sederlund, while in full possession of his mental faculties and without any undue influence having been exercised over his mind, handed these deeds to the respective grantees therein mentioned, so that they might record the same, and the deeds were thereupon duly recorded.

Sederlund first became acquainted with the plaintiff in the year 1914, being two years after the execution and delivery of said deeds, and the parties were married on August 10, 1915. Sederlund died on February 8, 1918, being then fifty-eight years of age, and having prior to his death, for a period of about one year, been afflicted with cancer of the stomach. Ella, the issue of the marriage of the deceased with the plaintiff, was born October 7, 1917.

In September, 1917, Sederlund transferred, by a bill of sale and by assignments, personal property consisting of live stock, farming implements, etc., and real-estate mortgages, to his children and widow, as follows: One note and mortgage of $1,000 to his son Elmer; one note and mortgage of $300 to his son *Alfred,* one note and mortgage of $1,100 to his sons *Carl* and Elmer; one note and mortgage of $500 to his daughter Girda; one note and mortgage of $1,500 to his son Martin; one note and mortgage of $1,050 to his son and daughter Martin and Esther; one note and mortgage of $300 to his daughter *Ruth;* one note and mortgage of $1,175 to his son and daughter *David* and *Olga;* one note

and mortgage of $750 to the plaintiff and her child, Ella; and a bill of sale of the live stock, etc., to his son and daughter *David* and *Ruth,* the total amount of the notes and mortgages so transferred aggregating $7,725.

The action was brought against the four defendants, they being the only children of the deceased by a prior marriage who were residents of Wisconsin, on the ground alleged in the complaint that such transfers of real estate and assignments of personal property were fraudulent as to the plaintiff and were designed to defeat plaintiff's dower and homestead rights in the real estate and to deprive her of her distributive share in the personal property.

For the appellant there was a brief by *Clarence C. Coe* and *Arthur E. Coe,* both of Barron, and oral argument by *Clarence C. Coe.*

For the respondents there was a brief by *Kennedy & Yates* of Amery, and oral argument by *W. T. Kennedy.*

Doerfler, J.    That the court erred in finding that the deeds to the real estate were delivered prior to Sederlund's marriage to the plaintiff, and that such transfers were in fraud of plaintiff's rights, constitutes appellant's first assignment of error.

With respect to the real estate transfers the court found:

"That on the 2d day of September, 1912, the said S. A. Sederlund made, executed, and delivered the several deeds of the lands described in the complaint, which were all the lands then owned by him, to the several children, the defendants in this action.    That said deeds were so made, executed, and delivered in consideration of love and affection and as a voluntary gift *inter vivos* to the said defendants.    That there was no fraud, undue influence, or contemplation of marriage at that time. . . . That said several deeds were fully executed and delivered beyond the power of the said Sederlund to recall the same."

The above findings are amply supported by the evidence.

In *Jones v. Caird,* 153 Wis. 384, 386, 141 N. W. 228, this court held, Mr. Justice TIMLIN writing the opinion:

"When a father executes and causes to be recorded in the register's office a deed of his land to his infant child, brings this to the knowledge of the child, and the grant is beneficial to the infant, and the latter thereafter makes claim for the land under the deed, its acceptance is presumed and the delivery is complete." Citing *Whiting v. Hoglund,* 127 Wis. 135, 106 N. W. 391; *Cooper v. Jackson,* 4 Wis. 537; *Cerney v. Pawlot,* 66 Wis. 262, 28 N. W. 183.

In the instant case the deeds in question were prepared and executed six years prior to the grantor's death and two years prior to the time when he first became acquainted with the plaintiff, and the evidence is undisputed that these deeds were actually delivered to the defendants and retained by them until they arrived at their home, when they were handed to the deceased for safe-keeping, and such deeds were actually, in the fall of 1917, recorded in the office of the proper register of deeds. The instant case is stronger than the *Jones Case* above cited, for in the latter case there does not appear to have been an actual delivery, but a constructive delivery only, as evidenced by the recording of the deed, while in the case at bar there was an undisputed actual delivery combined with a subsequent recording. The mere fact that the deceased during his lifetime remained in possession of the lands or leased them to his children cannot, in the absence of fraud, operate against the validity of these deeds. There is evidence to show that it was understood that the deceased was to act as guardian for the children and that he would look after the real estate during his lifetime. Had the deed, however, contained a provision that the conveyance in fee was to take effect in the future, upon the happening of a particular event—for instance, the death of the grantor,—such conveyance would nevertheless be a valid one in this state. *Ferguson v. Mason,* 60 Wis. 377, 19

N. W. 420; *Jones v. Caird,* 153 Wis. 384, 387, 141 N. W. 228.

In *Rogers v. Rogers,* 53 Wis. 36, 10 N. W. 2, it was held that if a grantor did not wish his deed to go into effect at once he should keep it to himself or place it in the hands of a stranger, and not deliver it to the grantee.

The deeds in the instant case having been delivered to the grantees and having been accepted by them, such delivery completes the transfer, and the title of the grantees cannot be divested except by a transfer from them or one resulting by operation of law. The very act of delivering these deeds to the grantees could have no other object or purpose than to meet the requirements of the law in an effort on the part of the grantor to transfer title. Even the voluntary destruction, by consent of both parties, of these deeds would not have operated to restore the title of the property to the grantor. *Parker v. Kane,* 4 Wis. 1, 12; *Wilke v. Wilke,* 28 Wis. 296; *Lampe v. Kennedy,* 56 Wis. 249, 14 N. W. 43.

"The time at which a man transfers his property before marriage is material in determining whether it can be deemed a fraud on the future wife's marital rights. To render it invalid it must as a general rule have been made in contemplation of the marriage, therefore if it was made before courtship or engagement, and not in contemplation of the marriage, no claim that a fraud upon the future wife's marital right was perpetrated can be sustained. . . . The relation of the beneficiaries of the transfer to the husband is most material in determining whether it is to be considered as a fraud on the future wife's rights. If the transfer is meritorious, viz. for the benefit of those having claims on the grantor, as where it is made to or for the benefit of the minor children of the grantor by a former wife, . . . it should not in the absence of any other indicia of fraud be deemed fraudulent as regards the future wife." 13 Ruling Case Law, p. 1083, §§ 106, 107.

There is no evidence in this case to show that when these real-estate transfers were made the deceased contemplated marriage. In fact he did not become acquainted with the

plaintiff until two years thereafter. Under the law above cited such transfers could in no event be deemed fraudulent as to the rights of the plaintiff. The court so found, and such finding is fully supported by the evidence.

On appellant's first assignment of error the holding of this court is therefore adverse to her contention.

By appellant's second assignment of error she contends that the transfer of the personal property to the children was invalid as against the widow's rights and was in fraud of her rights.

A statement will be found in 13 Ruling Case Law, p. 1087, § 111, that:

"Under statutes . . . in many jurisdictions, the wife is entitled to share in the distribution of her husband's estate or is given a share therein after the payment of the decedent's debts, of which she cannot be deprived by the will of the decedent, and according to some authorities it has been held that a voluntary transfer or gift by a husband of his personalty in contemplation of his death and to defeat his wife's interest under the statutes is a fraud on her rights and may be set aside at her instance."

The general rule, and the one adopted by the majority of the courts, as set forth in said sec. 111, is as follows:

"According to the great weight of authority, however, the view is taken that the interest of the wife as a statutory heir or distributee is on the same footing as that of children, that she has no vested or *quasi*-vested right in the husband's property during his lifetime, and that he may dispose of his property voluntarily though for the purpose of defeating the wife's right as widow, provided the disposition is not colorable merely and is not indicative of some other fraud on her than that arising from his absolute transfer of property to avoid her having an interest therein after his death."

Where a husband, therefore, prior to his death makes a colorable transfer of his personal property to another under such circumstances as would in law still retain the title in himself, such transfer will be deemed a fraudulent transfer as to the wife's rights as a widow and may be set

aside at her instance. During coverture the husband owes a duty of reasonable maintenance and support towards his wife, and a transfer of his property, designed for the purpose of avoiding such obligation, will be set aside during the lifetime of the husband, at the instance of the wife.

Under the statutes of this state the husband is prohibited from incumbering or transferring his homestead without the signature of his wife. The wife also has inchoate rights of dower. The wife cannot be deprived of such rights by the husband without her consent. As to personal property, however, the situation is radically different. With the exception of the restrictions above referred to, a husband has the absolute right during his lifetime to make absolute disposition of his personal property as he deems fit, the wife having no vested or *quasi*-vested interest in such property. True, under the statutes of our state as they existed at the time of the assignments with respect to the personal property, certain provisions are made for the benefit of a widow which she is authorized to claim, and which she is entitled to, whether the husband dies testate or intestate. She is also entitled, under sub. (6), sec. 3935, Stats., in case of intestacy, to an equal share in the residue of the personal property with a child of the deceased, provided such deceased leaves but one child surviving him, and in all other instances she is entitled to one third of such residue. It is evident that these statutes are designed to enable the widow to obtain, in any event, such share of the estate of the deceased as the legislature deemed reasonable. The statute is a beneficent one and recognizes the rights of a widow resulting from the obligations of marriage.

Where, therefore, a husband, shortly before his death, purports to transfer all or the greater portion of his property to others, which transfer has a tendency to frustrate the beneficent design of the statute with respect to a wife's distributive share in her husband's personal property, the amount of proof necessary to stamp such a transfer as

fraudulent depends in every instance upon the particular facts existing in each case. In the instant case it would appear that the transfer was not made secretly, nor was it made pursuant to undue influence exercised upon the mind of the deceased by the defendants. While the deceased at the time of the assignments was suffering from an incurable disease, nevertheless such assignments were made while the deceased was still able to be about and to transact business. There is no evidence in the case that undue influence was exerted. While the amount allotted plaintiff is disproportionate to that which she would have been entitled to had such assignments not been made, in view of the law as above cited, and in view of the findings of the lower court, we cannot say that such assignments were the product of fraudulent designs engendered by the defendants and made manifest by the final disposition. The deceased clearly had in mind a moral obligation, and solved that obligation from his viewpoint. The parties had been married but a short period of time, and the property distributed represents the earnings of the deceased and his former wife and their children.

We therefore hold that such assignments of personal property were not fraudulent as to the plaintiff.

The judgment of the lower court is therefore affirmed.

*By the Court.*—It is so ordered.