ESTATE OF STECK: OTTERSON, Executrix, Appellant, vs. FRASER, Executor, and others, Respondents.*

*February 7—March 5, 1957.*

---

* Motion for rehearing denied, with $25 costs, on May 7, 1957.

For the appellant there was a brief by *Joseph J. O'Day*, attorney, and *A. W. Schutz* of counsel, both of Milwaukee, and oral argument by *Mr. Schutz*.

For the respondent executor there was a brief by *Churchill, Duback & Churchill* of Milwaukee, and oral argument by *Paul H. Duback*.

For the respondent Marine National Exchange Bank there was a brief by *Kaumheimer, Alt & Likert* of Milwaukee, and oral·argument by *George H. Likert, Jr.*

For the respondent remaindermen, except as below entered, there was a brief by *Shaw,· Muskat & Paulsen* and *R. J. Schimmel,* attorneys, and *F. H. Prosser* of counsel, all of Milwaukee.

For the respondent minor remaindermen Patricia Ann Otterson and Mary Frances Otterson there was a brief and oral argument by *O. A. Grootemaat* of Milwaukee, guardian *ad litem.*

MARTIN, C. J.   Vincent Steck died February 16, 1954, at the age of seventy-eight, leaving his widow as his sole survivor. On September 18, 1951, he had executed a trust agreement (predated September 17, 1951) with the Marine National Exchange Bank, transferring to said bank securities

appraised at his death at $283,006.44. These assets remained in the sole possession of the trustee. The trust agreement provided that the net income therefrom was to be distributed to the donor as long as he lived, and upon his death to the donor's wife during her lifetime, subject to his power of appointment reserved therein to be exercised by his will. It also gave the trustee the right to invade the corpus on behalf of the widow if that should be deemed necessary to provide for her reasonable care and support. Upon the widow's death the remaining trust assets were to be distributed equally to remaindermen consisting of nieces and nephews of Vincent Steck and two grandnieces of his wife.

The trustee was given broad powers of administration and investment. The donor reserved the power of revocation and modification and a measure of control over investments during his lifetime. The donor subsequently executed two amendments to the trust agreement which are not material here.

On September 18, 1951, after execution of the trust agreement, Vincent Steck executed his last will and testament in which he gave to his wife certain personal property and effects, exercised the power of appointment reserved to him under the trust agreement to the extent of giving her the sum of $15,000, and specifically declined to exercise such power with respect to the balance of the trust estate. The remainder of his estate was designated as his "residuary estate" and was devised to the Marine National Exchange Bank, as trustee of the trust referred to, to be added to and become a part of the corpus of said trust. With respect thereto it was stated in paragraph 4 of the will:

"It is not my intention that 'my residuary estate' shall be received by said Marine National Exchange Bank as a testamentary trustee or upon a testamentary trust, but the devise and bequest of 'my residuary estate' is made to the aforesaid trust of September 17, 1951, as a distinct legal entity already in existence at the time of the execution of this will."

The will was admitted to probate April 8, 1954, at which time the widow testified as to proof of heirship and H. Morley Fraser was appointed executor. On April 28, 1954, Martha Steck filed her election not to take under the will. On June 4, 1954, she filed her petition for amendment of proof of will alleging that the trust instrument was testamentary in character and should be admitted as Vincent Steck's last will and testament and that the will already admitted should stand as a codicil thereto.

Basically it is appellant's contention that the trust instrument was executed in accordance with the requirements of the statute of wills and thus is a valid testamentary disposition. The question presented is not whether the trust created by Vincent Steck may be interpreted as testamentary, but whether it can be interpreted as an *inter vivos* trust, which is what Vincent Steck expressly intended it to be. If his intention can be carried out we must do so.

Appellant relies upon *Warsco v. Oshkosh Savings & Trust Co.* (1924), 183 Wis. 156, 196 N. W. 829, where it was held that to constitute a valid trust there must be an alienation of the donor's property in such a way as to cause a benefit to accrue to a *cestui que trust* unless prevented by a condition subsequent resulting from a lawful revocation of the trust. In that case the agreement was held not to constitute a valid conveyance in trust because the donor had retained full dominion over the trust res, the trustee being a mere agent to hold the property.

After the decision in that case, sec. 231.205, Stats., was enacted, which provides:

"Any instrument declaring and creating a trust shall not, when otherwise valid, be held to be an invalid trust or an attempted testamentary disposition of property because the grantor or creator of the trust reserved to himself, to be exercised by him during his lifetime, the right to revoke, amend, alter, or modify the trust instrument in whole or in

part, or to require that sums from the trust principal be paid to or used for him either at his request or in the discretion of the trustee. Nothing in this section shall be construed as altering or changing in any way the existing law or rules of law relating to the taxation of transfers of property in trust."

It is argued that the statute did not have the effect of changing the rule since the holding of the *Warsco Case* was reaffirmed in 1945 by *Tucker v. Simrow,* 248 Wis. 143, 145, 21 N. W. (2d) 252, and appellant quotes therefrom the following language:

"The doctrine of *Koppelkam v. First Wisconsin Trust Co.* 240 Wis. 254, 3 N. W. (2d) 350, and *Warsco v. Oshkosh Savings & Trust Co.* 183 Wis. 156, 196 N. W. 829, is to the effect that, where substantially entire control of the property disposed of is retained by the person making the deposit until his death, a testamentary disposition has been attempted and any document making such disposition must satisfy the statute governing execution of wills."

In that case Mrs. Simrow gave to her bank a paper containing instructions to pay to specified persons, in case of her death, the amounts in her savings and checking accounts. There was no contention that these instructions constituted a trust. The position of the appellant was that they constituted a valid contract between the bank and Mrs. Simrow for the benefit of third persons, in the nature of the creation of a joint account or the deposit of certificates of deposit jointly payable to the depositor and a third person. The court held that the instructions did not constitute such a contract but were attempted testamentary dispositions, ineffective because their execution did not comply with the statute of wills. We cannot interpret the language quoted above as having any effect on the rules relating to trusts, since the document in the *Simrow Case* was in no sense a trust instrument and sec. 231.205, Stats., was neither involved nor considered.

Appellant's argument that sec. 231.205, Stats., if held to change the rule of the *Warsco Case,* is unconstitutional, has no merit.

In creating the trust Vincent Steck reserved to himself during his lifetime the income therefrom and the right to revoke, amend, alter, or modify the trust instrument in whole or in part. The reservation of such powers is permitted by sec. 231.205, Stats., and the trust is not to be deemed testamentary on that ground. In addition the donor reserved the power of appointment by will and the right to subject to his approval the trustee's recommendations with respect to the retention, sale, or other disposition of the trust estate.

Appellant cites Restatement, 1 Trusts, p. 175, sec. 57 (2), where it is stated:

"Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with."

At page 179 the following comment is made on subsection (2):

"The rule stated in subsection (2) is applicable, however, only where the settlor reserves such power of control that the transferee is his agent. The intended trust is not testamentary merely because the settlor reserves power to direct the trustee as to the making of investments or the exercise of other particular powers, or power to appoint a substituted trustee."

As found by the trial court, the trust agreement gave to the trustee broad and extensive administration and investment powers. Paragraph 9 thereof states that "The trustee in its administration hereunder shall have full and complete

authority to do any and all things necessary for the orderly and efficient administration of the trust estate, and without limiting the generality thereof by the following enumeration, shall, to that end, be clothed with the absolute rights, powers, and discretions:" To retain indefinitely all trust assets, to invest and reinvest without restriction, to permit trust funds to remain uninvested, to carry any and all of the assets in its own name, to vote stock, to borrow money, to lease or exchange property, to pay, settle, or compromise claims against the trust estate, etc.

The donor required only that upon the trustee's periodic analyses of the assets it should communicate to him its recommendations based thereon in writing "and the donor may within thirty days thereafter by notice in writing to the trustee prescribe the investment thereof and/or instruct the trustee in respect of the retentions, sales, and dispositions if any so recommended." If the donor should fail to so prescribe or instruct the trustee, the trustee was to put its recommendations into effect.

This instrument was drawn by competent legal counsel. It would do violence to the words used therein to say that the investment control so reserved by the donor made the trustee his mere agent. The donor did not retain the power to deal with the trust as he pleased; his control over the investments was limited to approval or disapproval of the trustee's recommendations. Even where the powers conferred on the trustees by the trust instrument were to be exercised only upon written instructions of the settlor, in *Stouse v. First Nat. Bank* (Ky. 1951), 245 S. W. (2d) 914, 918, 32 A. L. R. (2d) 1261, 1267, the validity of the trust was upheld under the rule of the Restatement. It was there said:

"Reservation by the settlor of power to approve investments likewise has been held not to impart testamentary character to a trust. [Citing cases.]

"Both Scott and Bogert recognize that the *degree* of reserved control is the determining factor in the question of whether an instrument creates a valid trust or only a mere agency. See Scott on Trusts, sec. 57.2; Bogert on Trusts and Trustees, secs. 103, 104.

"We are of the opinion that the power reserved by [the settlor] to control the trustees in their administration of the trust, which power could be exercised only within the limits and in accordance with the terms of the trust instrument, was not of such a degree as to reduce the trustees to the status of agents."

Nor does the reservation by the donor of the power of appointment make the trust invalid. The trustee's powers were no more affected thereby than by the donor's retention of the power to revoke.

The trust created by Vincent Steck contained all the necessary elements defined in *Sutherland v. Pierner* (1946), 249 Wis. 462, 467, 24 N. W. (2d) 883, as follows:

"(1) A trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust property, which is held by the trustee for the beneficiary."

Marine National Exchange Bank, an experienced corporate fiduciary, received the trust principal upon execution of the trust agreement, accepted the duties of management therein conferred, and exercised them for the benefit of the donor for approximately two and one-half years before his death. This was no mere "illusory device;" it was in every sense an active trust, taking effect and serving a proper purpose during the life of the donor. The fact that the trust instrument also contained testamentary provisions does not change its character from that of an *inter vivos* trust to that of a last will and testament.

"The mere fact that the agreement provided for disposition of the trust property upon the settlor's death was not regarded as a circumstance of any importance in view of the creation of rights during his lifetime. See 1 Bogert, Trusts and Trustees, sec. 103; 1 Scott, Trusts, p. 338, sec. 57.1." *Koppelkam v. First Wisconsin Trust Co.* (1942), 240 Wis. 254, 257, 3 N. W. (2d) 350.

Appellant contends that because the will bequeaths the residue of Vincent Steck's estate to the trustee, the trust was incorporated in the will by reference. This is exactly what the testator did not do, expressly stating in his will that it was not his intention that the residue should be received by the trustee as a testamentary trustee but as the trustee of a "distinct legal entity already in existence." To apply the doctrine of incorporation by reference in this situation would be to ignore that expressed intent.

It is further contended that to hold this trust instrument a valid *inter vivos* trust is to open the door to fraud upon the widow. The argument has no place here. As stated by the trial court, "There has been no allegation by the petitioner that any fraud existed in the execution of the trust instrument in question and the court can find no evidence to sustain such finding had the allegation been made." In establishing the trust Vincent Steck provided that his widow should receive the entire income from its assets, almost $12,000 yearly, and the right to invade the corpus should her needs require it. This hardly evinces an intention to deprive his wife of her just share in his estate, even though, as the trial court commented, "he may have had some apprehension and concern as to the manner in which she was to receive the same."

The fact that the widow received less at his death under the trust than she would have if he had disposed of all his personal property by will is not in itself indicative of fraud on her.

"... the amount of proof necessary to stamp such a transfer as fraudulent depends in every instance upon the particular facts existing in each case." *Sederlund v. Sederlund* (1922), 176 Wis. 627, 634, 187 N. W. 750.

There is neither allegation nor proof of fraud and the trust being otherwise valid, the determination of the trial court must stand.

*By the Court.*—Order affirmed.

* Motion for rehearing denied, with $25 costs, on May 7, 1957.