## Myrtle RICHARDS *v.* WORTHEN BANK & TRUST COMPANY

77-40                                                    552 S.W. 2d 228

### Opinion delivered June 27, 1977
(Division I)

*Guy H. Jones, Phil Stratton, Guy H. Jones Jr.* and *Casey Jones,* by: *Phil Stratton,* for appellant.

*Rose, Nash, Williamson, Carroll, Clay & Giroir,* by: *Stanley E. Price,* for appellee.

FRANK HOLT, Justice. This appeal involves the validity of an inter vivos trust created by Garland Richards (deceased)

for the benefit of his wife, the appellant. After Garland's death in 1973, his will, which predated the inter vivos trust, was filed for probate and appellant filed an election to take against the will. Appellant then sought a declaratory judgment to the effect that the inter vivos trust was invalid. The chancellor upheld the trust. For reversal appellant first argues that the chancellor erred in refusing to sustain her allegations that the inter vivos trust was testamentary in character or was an illusory scheme or device to defeat the appellant's marital rights. The chancellor was correct.

On September 30, 1970, Richards created the inter vivos trust, naming appellee as trustee and provided $10,440 funding for the trust out of a checking account held jointly with his wife and her sister. Additional funding totaling $7,000 also originated from their joint account. Other funding of the trust came from Garland's own property, bringing the total value of the trust res to $43,439.51. According to the pertinent terms of the trust, the trustee would distribute the net income from the trust res to the settlor, Garland Richards, during his life. After Garland's death, the net income would be distributed to appellant, his wife, together with as much of the corpus as might be necessary for her care and comfort. Any assets remaining at appellant's death would then go to certain of their named relatives in equal shares. Appellant argues that, by Garland reserving the income to himself for life and reserving the power to revoke the trust or withdraw the trust property, the trust is rendered testamentary in nature.

In the absence of a statute to the contrary, a settlor may create a trust for any lawful purpose and the trust may be created for his own benefit as well as the benefit of another. *Gall v. Union National Bank,* 203 Ark. 1000, 159 S.W. 2d 757 (1942); *Murry v. Hale,* 203 F. Supp. 583 (1962). A settlor has the power to reserve the right to consume the principal of the trust res or to revoke the trust in whole or in part. *Cribbs v. Walker,* 74 Ark. 104, 85 S.W. 244 (1905); *United Building & Loan Association* v. *Garrett,* 64 F. Supp. 460 (1946); and see also 164 A.L.R. 881.

The general rule is stated in 1 Restatement of Trusts 2d,

§ 57:

> Where an interest is created in a beneficiary other than the settlor, the disposition is not testamentary and invalid for failure to comply with the requirement of the Statute of Wills merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust.

See also 76 Am. Jur. 2d, Trusts, § 25. In *United Building & Loan Association* v. *Garrett, supra,* the settlor named himself trustee, reserved the income from the trust to himself for life, retained the power to revoke the trust or to withdraw the trust properties. One year after the settlor's death, the assets were to be distributed to named beneficiaries. The trust was attacked on the ground that it was testamentary and therefore void for noncompliance with the Statute of Wills. The court upheld the validity of the trust stating the test to be:

> If by terms of the instrument, an interest passes to the beneficiaries during the life of the settlor, even though possession or enjoyment thereof is postponed until the death of the settlor, the trust is not testamentary.

Here, the trust was created over two years before Garland's death. At that time an interest was vested in the settlor, the appellant and other named beneficiaries of the trust res. Only the enjoyment of the interests of appellant and the other beneficiaries was delayed until the death of Garland. The settlor was within his legal rights in his reservation of powers and rights. Therefore, we hold that the chancellor was correct in ruling that the inter vivos trust was not testamentary in nature.

Appellant also argues that the inter vivos trust is an illusory scheme or device to defeat the appellant's marital rights even though no "evil" intent existed. It is true that appellant will immediately receive less from the trust proceeds than if the trust were ruled invalid. However, this is

not the test to be applied in determining if a trust is a fraud as to appellant's marital rights. The important consideration is the settlor's intent. *Potter* v. *Winter,* 280 S.W. 2d 27 (Mo. 1955); *Sherill* v. *Mallicote,* 57 Tenn. App. 241, 417 S.W. 2d 798 (1968); *Rose* v. *St. Louis Union Trust Co.,* 43 Ill. 2d 312, 253 N.E. 2d 417 (1969); and *In re Steck's Estate,* 275 Wis. 290, 81 N.W. 2d 729 (1957). Here the settlor was attempting to make adequate arrangements for the care of his wife, whose health was apparently failing.[1] In addition to the provisions of the inter vivos trust, previously recited, Garland's will left his home to his wife for her life with the remainder to her sister provided she lived with appellant and cared for her for a certain length of time following his demise. The residue of his property went into a testamentary trust from which, after one year, appellant was to receive $300 per month income and additional funds from the principal and earnings of the trust were to be distributed to appellant if necessary for her care. Any assets left in the trust following appellant's death would be distributed to certain named relatives of each of them. Here it is apparent that Garland's inter vivos trust was not a scheme or device to defeat his wife's marital rights. To the contrary, it appears to be an additional provident method of assuring her future care and support. The chancellor was correct in ruling that the trust was not a scheme to defraud appellant of any property rights.

Appellant finally argues that the chancellor erred in approving the transfer of personalty by one tenant by the entirety (her deceased husband) into the inter vivos trust without the consent or knowledge of the other tenant by the entirety (appellant Myrtle). The parties stipulated that $17,440 of the trust res had its origin in a husband-wife joint checking account. A third person, appellant's sister, was also listed on the account. Any one of the three persons listed on the joint account could have withdrawn all or any part of the funds. Ark. Stat. Ann. § 67-521 (Repl. 1966). As indicated, the funds were not withdrawn for the purpose of defrauding appellant but rather for the beneficent purpose of funding a trust for the assurance of her care and support. There is no evidence that appellant contributed anything to the joint ac-

---

[1] A guardian was appointed for Myrtle eight months after her husband's death.

count. The withdrawals were over a period of approximately two and one-half years. Appellant, as a party to the account, had access to the bank's record or status of the account and is charged with notice of the withdrawals. *Porter* v. *Trainor,* 243 Ark. 550, 420 S.W. 2d 860 (1967). Here we agree with the chancellor that the transfer of funds by Garland to the inter vivos trust from a joint banking account was legal and proper.

Affirmed.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and ROY, JJ.