SLIP OPINION

Cite as 2014 Ark. 237

# SUPREME COURT OF ARKANSAS

No. CV-13-881

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF H. RIPLEY THOMPSON, DECEASED<br><br>AND<br><br>VANCE THOMPSON, TRUSTEE OF H. RIPLEY THOMPSON REVOCABLE TRUST<br>APPELLANT<br><br>V.<br><br>ANNE L. THOMPSON<br>APPELLEE | **Opinion Delivered** MAY 22, 2014<br><br>APPEAL FROM THE WOODRUFF COUNTY CIRCUIT COURT [NOS. PR-2010-14-3 & CV-2011-49-3]<br><br>HONORABLE BENTLEY E. STORY, JUDGE<br><br>AFFIRMED. |

**DONALD L. CORBIN, Associate Justice**

Appellant, Vance Thompson as executor and personal representative of the estate of H. Ripley Thompson ("the Estate") and as trustee of the H. Ripley Thompson Revocable Trust ("the Trust"), appeals the order of the Woodruff County Circuit Court finding that Appellee Anne L. Thompson's election to take against the will of her husband, the Decedent, H. Ripley Thompson ("Ripley" or "the Decedent"), was valid and that, because the Decedent's intent in creating the Trust was to deprive Appellee of her elective share in his Estate, the assets held by the Trust must be included in his Estate for purposes of determining her elective share. Appellant presents four points for reversal, with the central issues being whether the circuit court erred in finding that the Decedent intended to deprive Appellee of her elective-spousal share and whether the assets of the inter vivos revocable Trust should therefore be included in the Decedent's Estate for purposes of calculating Appellee's elective-

SLIP OPINION

spousal share. Because these issues need clarification or development of the law, jurisdiction of this appeal is properly in this court pursuant to Arkansas Supreme Court Rule 1-2(b)(5) (2013). We cannot say that the circuit court's findings were clearly erroneous, and we affirm.

Appellee initiated the present lawsuit on June 2, 2011, by filing a complaint in the Woodruff County Circuit Court against Appellant, as Trustee, asserting a cause of action for imposition of a constructive trust over the Trust assets. She later filed an amended complaint in October 2011. In that amended complaint, Appellee alleged that she had married the Decedent on July 15, 2001, that they had remained husband and wife until his death on February 20, 2010, and that, because the Decedent had no children, she was his sole heir. She also alleged that she previously had a successful career as a registered nurse, but that she had left her career at her husband's request because he had promised to take care of her. Appellee attached to her amended complaint her deceased husband's will, dated May 29, 2009 ("the 2009 Will"), that had been admitted to probate and to which she had filed a petition to set aside and an election to take against. She also attached to her amended complaint the last Restatement of the H. Ripley Thompson Revocable Trust, also dated May 29, 2009 (the 2009 Trust), which stated it was an amendment to a trust first made in 2002, and which had first been amended in 2004. In addition, Appellee attached as an exhibit to her amended complaint the petition she had filed in probate court to have the 2009 Will and the 2009 Trust (collectively "the 2009 Will and Trust") set aside on grounds of incapacity and undue influence, or alternatively, to elect to take against the 2009 Will. For her cause of action in her amended complaint, Appellee sought the imposition of a constructive trust on the 2009

SLIP OPINION

Trust assets for her elective share; alternatively, she sought a declaration that the 2009 Will and Trust were invalid as a result of undue influence and lack of testamentary capacity. Appellee also sought attorney's fees pursuant to Arkansas Code Annotated section 28-73-1004 (Repl. 2012).

In addition to the 2009 Will and Trust, Appellee also attached as exhibits to her amended complaint her husband's previous will, dated June 14, 2004 ("the 2004 Will"), the original Trust declaration, dated September 19, 2002 ("the 2002 Trust"), and the first amendments to the 2002 Trust, dated June 14, 2004 ("the 2004 Trust"). According to the facts alleged in the amended complaint, upon the Decedent's death, the property of the Trust was all personalty and valued in excess of $5.8 million, while the inventory of the Estate showed all personalty valued at $230,471. Appellee alleged that, pursuant to Arkansas Code Annotated section 28-39-401(b)(1), her elective share of the Estate should be calculated as one-half of the total of the estate assets plus the Trust assets, or $3,015,209.

The circuit court held a three-day hearing on the complaint, which began on October 30–31, 2012, and was continued to November 8, 2012. The circuit court entered an order on May 9, 2013, stating that the probate case and the civil case had been consolidated for trial and finding that, because the Decedent had intended to deprive Appellee of her marital rights to property when he executed the 2009 Will and Trust, the Trust assets would be included as part of the Estate for the limited purpose of calculating Appellee's elective share.

The circuit court's thorough order included, among others, the following specific findings of fact. "The principal asset owned by [the Decedent] was his shares in the M.D. Thompson and Son Co[mpany]. This family owned company owns very substantial assets including farm land and banking interests. M.D. Thompson was [the Decedent's] father. [The Decedent] had two brothers . . . and two sisters." During the course of the marriage, the Decedent executed a series of pour-over wills and inter vivos revocable trusts in 2002, 2004, and 2009. The first will and trust were created on September 19, 2002, and on that same date, the Decedent signed a bill of sale "in which he transferred an extensive amount of stocks, investment accounts, and 409.09 shares of M.D. Thompson & Son Co. common stock from his individual name to the Trust. This indicates that [the Decedent] owned the stock prior to the transfer to the Trust." The Decedent was the grantor and the trustee of the Trust, and he retained the power to revoke or amend the Trust during his lifetime.

The circuit court's findings continued as follows. Early in 2008, Appellee was diagnosed with breast cancer. In mid-2008, the home in which Appellee and Decedent were living in Heber Springs was contaminated with mold, and they left the home while remediation took place. They agreed that the Decedent would return to his home in McCrory and Appellee would go to Memphis to sell some real property she owned there. While in Memphis, Appellee suffered a stroke in October 2008. She returned to the home in Heber Springs in December 2008. By 2008, the Decedent's health was precarious, and he had a medical history of heart disease, type-2 diabetes, and dementia, as well as other health-related complications. He was hospitalized for dehydration in February 2009, and upon

SLIP OPINION

discharge, Appellant took the Decedent to either an assisted–living facility or a nursing home. The Decedent executed the 2009 Will and Trust while he was in the nursing home, where he remained until his death in 2010.

As noted, for reasons discussed in detail later herein, the circuit court's order concluded that in making his 2009 Will and Trust, the Decedent intended to deprive Appellee of her marital rights to his property. The order also found that Appellee's election to take against the will was valid and thus directed that the assets of the Trust be used to calculate Appellee's elective share. The circuit court stated in its order that, because it had ruled that the Trust was an attempt to deprive Appellee of her elective share, there was no need for the court to address the issues of whether the 2009 Will had been executed under undue influence, whether the Decedent died intestate, or whether the 2004 Will and 2004 Trust had become operative. This appeal followed.

Appellant asserts four points for reversal of the circuit court's order. First, Appellant contends that the elective share of a surviving spouse is limited to property owned by the deceased spouse at the time of his or her death, and the circuit court therefore erred in interpreting Arkansas Code Annotated section 28-39-401(a) (Repl. 2012) to include the assets of the Trust in the Decedent's Estate. Second, Appellant contends that the evidence does not support the finding that Appellee was defrauded of her statutory rights to the Decedent's property. Third, Appellant contends that Appellee failed to prove fraud on her marital rights. Fourth, Appellant contends alternatively that, if it is found that the Decedent intended to

5

SLIP OPINION

defraud Appellee of her marital rights, then the Trust property must be distributed according to the terms of the 2004 Trust.

The construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity. *Anna Flippin Long Trust v. Holk*, 315 Ark. 112, 864 S.W.2d 869 (1993). Subsequent to the passage of amendment 80 to the Arkansas Constitution, circuit court jurisdiction now includes all matters previously cognizable by circuit, chancery, probate, and juvenile court. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005) (citing amendment 80, § 19(B)(1); Ark. Sup. Ct. Admin. Order No. 14, § 1(a), (b); and *In re Implem. of Amend. 80*, 345 Ark. App'x 664 (2001)). This court has traditionally reviewed matters that sounded in equity de novo on the record with respect to factual questions and legal questions. *Singletary v. Singletary*, 2013 Ark. 506, ___ S.W.3d ___. We have stated repeatedly that we will not reverse a finding by a trial court in an equity case unless the finding was clearly erroneous. *Id.* We have further stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We also give due deference to the superior position of the chancellor or circuit court to view and judge the credibility of the witnesses. *Id.* These common-law principles continue to apply after the adoption of amendment 80 to the Arkansas Constitution. *Id.*

Appellant's first argument for reversal of the circuit court's order is that the circuit court erred in ruling that the property owned by the Trust at the time of the Decedent's death

should be subject to Appellee's elective share because the Decedent did not own the Trust property at the time of his death. Appellant argues that the circuit court's ruling violates the General Assembly's statutory scheme for the creation and administration of trusts, Arkansas Code Annotated sections 28-73-101 to –1106 (Repl. 2012) (the Arkansas Trust Code), and renders invalid other provisions for the transfer of property upon death that are outside the Arkansas Probate Code. He maintains the general proposition that, upon a settlor's death, title to property held in an inter vivos revocable trust becomes irrevocable, such that, regardless of the nature of the rights retained over the assets by the settlor during his lifetime, the property ceases to be owned by the settlor upon his death and is removed from his or her estate.

Our review of the circuit court's order reveals that the court understood correctly the concept of an inter vivos revocable trust, because the circuit court did not rule that the Trust was invalid for all purposes or that the assets of the Trust would be included in the Decedent's Estate for all purposes. Rather, the circuit court ruled that the assets of the Trust would be included in the Estate only for the limited purpose of calculating Appellee's elective share. This ruling was expressly linked to the circuit court's finding that the Decedent had intended to deprive Appellee of her marital share. Simply, Appellant reads much more into the court's ruling than is actually there. Moreover, Appellant's first point for reversal completely overlooks the issue of the effect of the alleged fraud on a spouse's marital rights.

The circuit court expressly acknowledged in its order that "[t]here has been no dispute that the H. Ripley Thompson Revocable Trust became irrevocable upon Ripley's death."

The circuit court's order also acknowledged that Appellant "does not dispute that [Appellee] is the surviving spouse of Ripley and that she is entitled to her elective share of the Estate." The issue between the parties, as the order observed, is whether the assets of the Trust should be included in the Estate when determining Appellee's elective share. The circuit court ultimately concluded that the assets of the Trust would be included in the Decedent's Estate for the limited purpose of calculating Appellee's elective share due to the fact that the Decedent's intent in amending the Trust in 2009 was to deprive Appellee of her marital rights to his property. For the reasons explained below, we cannot say that this finding was clearly erroneous.

Arkansas law gives a surviving spouse the right to elect to take a share of the estate of his or her deceased spouse against the will of the deceased. Ark. Code Ann. § 28-39-401. This elective share is the equivalent of the spouse's dower or curtesy rights, as well as any homestead rights and statutory allowances. *See* section 28-39-401(b)(1), (2). The statute provides in pertinent part as follows:

*28-39-401.  Rights of surviving spouse—Limitations.*

(a) When a married person dies testate as to all or any part of his or her estate, the surviving spouse shall have the right to take against the will if the surviving spouse has been married to the decedent continuously for a period in excess of one (1) year.

(b) In the event of such an election, the rights of the surviving spouse in the estate of the deceased spouse shall be limited to the following:

(1) The surviving spouse, if a woman, shall receive dower in the deceased husband's real estate and personal property as if he had died intestate. The dower shall be additional to her homestead rights and statutory allowances; and

SLIP OPINION

> (2) The surviving spouse, if a man, shall receive a curtesy interest in the real and personal property of the deceased spouse to the same extent as if she had died intestate. The curtesy interest shall be additional to his homestead rights and statutory allowances . . . .

Ark. Code Ann. § 28-39-401(a)–(b)(2).

Citing *Gregory v. Estate of Gregory*, 315 Ark. 187, 866 S.W.2d 379 (1993), the circuit court in the present case correctly observed in its order that a surviving spouse's elective-share interest can vest only in property that the deceased spouse owned at the time of death. However, as the circuit court went on to observe, "fraud practiced upon the surviving spouse can, under certain circumstances, result in property being held by a constructive trust." This too was an accurate statement of the law by the circuit court, as stated by this court almost a century ago:

> The general rule is that if a man or woman convey away his or her property for the purpose of depriving the intended husband or wife of the legal rights and benefits arising from such marriage, equity will avoid such conveyance, or compel the person taking it to hold the property in trust for or subject to the rights of the defrauded husband or wife.

*West v. West*, 120 Ark. 500, 504, 179 S.W. 1017, 1018 (1915).

As noted, Arkansas law is well settled that the surviving spouse's elective interest can vest only in property that the deceased spouse owned at the time of death. *Gregory*, 315 Ark. 187, 866 S.W.2d 379. And, as the circuit court observed in this case, the parties did not dispute that the Trust had become irrevocable upon the Decedent's death. Thus, generally speaking, in the absence of fraud, the assets of the Trust would have remained assets of the Trust after the Decedent's death. That is not the case here, however, as the circuit court

9

found that the Decedent did have the intent to defraud his spouse's marital right to property.

As the foregoing citation to *West* demonstrates, even before the use of inter vivos revocable

trusts became commonplace, Arkansas law had long recognized the effect of fraud on a

surviving spouse's marital rights, and our equity courts had long provided a remedy to

surviving spouses for fraud on their martial rights. This court has made clear the following:

> This court has recognized that the surviving spouse's right to an elective share is
> inviolate. This is true despite our acknowledgment that a spouse's decision to elect to
> take against the will at times rebuffs the testator's testamentary wishes. The elective
> share provisions are designed to strike a balance between a testator's right to control
> the distribution of his or her property for life, while preserving the State's interest in
> protecting the surviving spouse.

*Hamilton v. Hamilton*, 317 Ark. 572, 578, 879 S.W.2d 416, 419 (1994) (citations omitted).

As clearly stated in *Hamilton*, this court has zealously protected a spouse's marital rights

in property, even when a spouse's assertion of those rights is contrary to a testator's right to

control the distribution of his property upon his death. However, while Arkansas law has

long recognized the concept of fraud on a surviving spouse's marital rights to property and

an elective share, the question whether the assets of an inter vivos revocable trust are subject

to the elective claims of a defrauded surviving spouse is an issue that has not been developed

by this court. We develop this area of the law later in this opinion. Suffice it to say here that,

for purposes of addressing Appellant's first point, the circuit court's finding that the Trust

assets were to be considered part of the Estate for the limited purpose of calculating Appellee's

elective share was expressly linked to the finding of fraud on Appellee's marital rights and was

not a broad ruling that invalidated the Trust entirely or directed that the Trust assets be

included in the Estate for all purposes. Appellant's first point for reversal paints too broad a

picture of the circuit court's ruling and ignores the effect of the allegation of fraud on

Appellee's marital rights; therefore, it is wholly without merit.

As his second point for reversal, Appellant challenges the circuit court's finding that

the Decedent intended to defraud Appellee of her statutory rights to his property. The only

Arkansas case addressing such an issue is *Richards v. Worthen Bank & Trust Co.*, 261 Ark. 890,

552 S.W.2d 228 (1977). In *Richards*, this court addressed the argument that the creation of

an inter vivos revocable trust amounted to fraud on a surviving spouse's marital rights:

> Appellant also argues that the inter vivos trust is an illusory scheme or device to defeat the appellant's marital rights even though no "evil" intent existed. It is true that appellant will immediately receive less from the trust proceeds than if the trust were ruled invalid. However, this is not the test to be applied in determining if a trust is a fraud as to appellant's marital rights. The important consideration is the settlor's intent. *Potter v. Winter*, 280 S.W.2d 27 (Mo. 1955); *Sherill v. Mallicote*, 417 S.W.2d 798 (Tenn. Ct. App. 1967); *Rose v. St. Louis Union Trust Co.*, 53 N.E.2d 417 (Ill. 1969); and *In re Steck's Estate*, 81 N.W.2d 729 (Wis. 1957). Here the settlor was attempting to make adequate arrangements for the care of his wife, whose health was apparently failing. In addition to the provisions of the inter vivos trust, previously recited, Garland's will left his home to his wife for her life with the remainder to her sister provided she lived with appellant and cared for her for a certain length of time following his demise. The residue of his property went into a testamentary trust from which, after one year, appellant was to receive $300 per month income and additional funds from the principal and earnings of the trust were to be distributed to appellant if necessary for her care. Any assets left in the trust following appellant's death would be distributed to certain named relatives of each of them. Here it is apparent that Garland's inter vivos trust was not a scheme or device to defeat his wife's marital rights. To the contrary, it appears to be an additional provident method of assuring her future care and support. The chancellor was correct in ruling that the trust was not a scheme to defraud appellant of any property rights.

*Richards*, 261 Ark. at 893–94, 552 S.W.2d at 230–31. Thus, in *Richards*, this court held that

the settlor's intent is the appropriate and applicable test to be used when determining whether

an inter vivos revocable trust constitutes a fraud on a surviving spouse's marital rights to property. Accordingly, that is the test to be applied in the present case, and that is the test the circuit court correctly used here.

In addition to *Richards*, the circuit court relied on *Karsenty v. Schoukroun*, 959 A.2d 1147 (Md. 2008), for the proposition that the settlor's intent should be evaluated on a case-by-case basis considering all relevant facts and circumstances. We are of the view that the circuit court's reliance on *Karsenty* for this proposition was consistent with the views expressed in the cases from other jurisdictions cited by this court in *Richards*. *See, e.g., Potter v. Winter*, 280 S.W.2d 27 (Mo. 1955) ("[I]n treating with plaintiff-appellant's contention of fraud, we are concerned only with the husband-grantor's intent. And in determining his intent we may consider and weigh all of the facts and circumstances in evidence."); *see also Sherrill v. Mallicote*, 417 S.W.2d 798, 802 (Tenn. Ct. App. 1967) ("In cases of this type there can be no fixed rule of determining when a transfer or gift is fraudulent to a wife; each case must be determined on its own facts and circumstances."); *see also In re Steck's Estate*, 81 N.W.2d 729 (Wis. 1957).

> The fact that the widow received less at his death under the trust than she would have if he had disposed of all his personal property by will is not in itself indicative of fraud on her . . . . "[T]he amount of proof necessary to stamp such a transfer as fraudulent depends in every instance upon the particular facts existing in each case."

*Steck's Estate*, 81 N.W.2d at 734 (quoting *Sederlund v. Sederlund*, 187 N.W. 750, 752 (Wis. 1922)).

In the present case, the circuit court applied the intent test adopted in *Richards*, discussed some of the factors considered by the Maryland court in *Karsenty*, and concluded

12

quite clearly and unequivocally that, in this case, the Decedent's "intent, as the Grantor of the 2009 H. Ripley Revocable Trust was to defraud [Appellee] and deny her statutory rights, pursuant to Arkansas Code Annotated § 28-39-401(a) to the property held by the 2009 Trust."

The circuit court went on to state the bases for that opinion. The circuit court first noted that the 2002 Trust and the 2004 Trust provided Appellee with income for life from the Trust's net income, gave her the right to invade the principal for extraordinary expenses, and gave her annual withdrawal rights of $5,000 or 5% of the net fair-market value of the principal on the date of withdrawal. In contrast, the circuit court observed, the 2009 Trust provided nothing to Appellee except the $100,000 bequest, but only if she did not contest the 2009 Will and Trust. The circuit court acknowledged the finding of the *Richards* court that the grantor in that case clearly made provisions for his wife that were consistent with his ability to provide for her given the size of his estate. With that in mind, the circuit court in the present case observed that the Decedent's property was valued at more than $6 million and that a "$100,000.00 bequest if she does not contest the Will and Trust falls woefully short of providing for his wife upon his death."

The circuit court observed in its order that while Appellee and the Decedent lived together, he showered her with gifts of great value, including cash, and that while they were living together he ensured that she would be provided for after his death through his 2002 and 2004 Wills and Trusts. The circuit court further observed that it was not until they were separated, and after she had filed for separate maintenance, that he redrafted his 2009 Will and

Trust "in order to leave her basically nothing." The circuit court thus found that in the early years of the marriage, the Decedent provided for Appellee quite well and had no intent to deprive her of her marital rights to his property, but that in the latter years of the marriage, the Decedent stopped providing for Appellee to the extent that she "felt impelled to file for separate maintenance." The circuit court found that the Decedent's intent to deprive Appellee of her marital rights manifested sometime in 2008 when his health had begun to deteriorate and the parties were no longer living together.

The circuit court noted other indicators of the Decedent's intent to deprive Appellee of her marital rights to his property, such as the change in Appellee's status as trustee. In the 2002 Trust and the 2004 Trust, Appellee was to be a co-trustee; but, with the 2009 amendment, the Decedent and Vance Thompson were named as co-trustees; Appellee was not. Because Appellee was removed from all participation in the 2009 Trust, the circuit court concluded that "[c]learly, [the Decedent's] intent was to deprive her of her statutory rights to his property." The circuit court pointed out still further indicators of the Decedent's intent, such as the fact that the 2009 Will and Trust had been executed while he was in a nursing home and that less than a year had passed between the execution of the 2009 Will and Trust and the Decedent's death. The circuit court also noted the fact that the Decedent gave Appellee copies of the 2002 Will and Trust, as well as copies of the 2004 Will and Trust, but did not give her a copy of the 2009 Will and Trust. The circuit court found that this was further evidence of the Decedent's intent to deprive Appellee of her statutory rights to his property and to keep her uninformed of his actions and intentions.

The circuit court's ultimate conclusion was that "[the Decedent's] intent was to deprive [Appellee] from receiving from his testamentary estate," and therefore that her "election to take against the 2009 Will and Trust . . . [was] valid" and that "the assets transferred to the Trust by [the Decedent] must be included in the calculations to determine [Appellee]'s elective share.

The circuit court stated multiple bases for its finding that the Decedent intended to deprive Appellee of her marital rights to his property.  There is substantial testimony at the hearing to support these findings, but we need not recite such testimony because, as the circuit court so carefully pointed out in its order, the Decedent's intent to deprive Appellee of her marital rights in his property is evident on the face of the Will and Trust documents.  Based on all the facts and circumstances considered by the circuit court, we cannot say the finding that the Decedent intended to deprive Appellee of her marital rights in his property by transferring his property to the 2009 Trust was clearly erroneous.

In reaching our conclusion, we are mindful of Appellant's citation to *Estate of Dahlmann v. Estate of Dahlmann*, 282 Ark. 296, 668 S.W.2d 520 (1984), for the proposition that a spouse is under no obligation to provide anything to his or her spouse.  However, what Appellant overlooks about the *Dahlmann* case is its recognition of a remedy if a spouse does not provide for his or her surviving spouse by permitting the surviving spouse to elect to take against the will.  This court stated as follows:

> A spouse has the right to make a will which excludes a surviving spouse or provides for a bequest or devise in lieu of dower.  That a surviving spouse may take against a will prevents any injustice that might result from the spouse's exercise of that right.

15

*Estate of Dahlmann*, 282 Ark. at 298, 668 S.W.2d at 521.  Thus, while it is true that, as Appellant argues, a testator can devise his property however he chooses and can exclude or disinherit his spouse, the testator's choices do not prevent the surviving spouse from gaining his or her elective share.

Likewise, we are mindful of Appellant's argument that the Decedent made substantial inter vivos gifts to Appellee that should be considered in lieu of her elective share.  The circuit court carefully considered these gifts and observed that Appellant's argument did not take into consideration that some of these gifts had been made while the 2002 Will and Trust and the 2004 Will and Trust were in effect and certainly well before the 2009 Will and Trust took effect.  Accordingly, the circuit court ruled that these inter vivos gifts should not be considered in lieu of any statutory testamentary requirements because they were not understood to be of a testamentary nature when they were given, regardless of any express statement to the contrary in the 2009 Will and Trust.  Our review of the gifts reveals that they had been given in 2001, 2006, and 2008, well before the 2009 Will and Trust were executed.  Therefore, we cannot say that the circuit court was clearly erroneous in finding that these inter vivos gifts should not be considered in lieu of Appellee's elective share.

As his third point for reversal, Appellant contends that, in order to prove that the Decedent's actions in amending the Trust in 2009 constituted a fraud on her marital rights, Appellee was required to meet the elements of a fraud claim with evidentiary proof, and that she failed to do so.  This argument is without merit for several reasons.

First, Appellant cites no authority for the proposition that "fraud on marital rights" as that phrase is used in the estate-planning context is to be analyzed under the traditional test for common-law fraud. Indeed, we are of the view that this court rejected that idea in *Richards* when we adopted the test of the settlor's intent to be used in determining if an inter vivos revocable trust is purposed to deprive a spouse of his or her marital rights to property. Second, the circuit court in this case did not apply the test for common-law fraud and made no ruling with respect to the elements of common-law fraud. Finally, we note that other courts have expressly rejected the idea that "fraud on marital rights" in this context is akin to common-law fraud. *See, e.g.*, *Karsenty*, 959 A.2d 1147, 1173 (quoting *White v. Sargent*, 875 A.2d 658, 666 (D.C. 2005)) ("[F]raud in the classic sense" is not at issue and a court should instead look for an "improper circumvention of the marital rights of the surviving spouse."). Thus, consistent with our adoption of the settlor's intent test in *Richards*, we conclude that Appellee was not required to prove the elements of common-law fraud.

As his fourth and final point for reversal, Appellant challenges the circuit court's ruling that Appellee be allowed to take her elective share from the 2009 Will and Trust and that this elective share would include the assets the Decedent had transferred to the Trust. Appellant argues that in so ruling, the circuit court determined that it was not necessary to decide whether the Decedent died intestate or whether the 2004 Will and Trust were revived; instead, argues Appellant, it fashioned a new form of relief and erroneously augmented the Decedent's Estate. In support of his argument, Appellant points out that the General Assembly did not adopt as part of the Arkansas Probate Code, Arkansas Code Annotated

§§ 28-1-101 et seq., the concept of an augmented estate that would include trust property or other nonprobate transfers of a decedent. Appellant maintains that the proper remedy would be to set aside or invalidate, as fraudulent, the 2009 Trust and distribute the Trust assets according to the terms of the 2004 Trust.

As previously noted, this court in *Richards* adopted the test of the settlor's intent to determine whether an inter vivos trust amounted to a fraudulent scheme to defeat a surviving spouse's marital rights to property and concluded on the facts there presented that no such intent to deprive the spouse of her marital rights existed. Because the *Richards* court did not find an intent to deprive the spouse of her elective share, the court did not go on to consider what the effect of such an intent would be if it had been determined to exist. Accordingly, that is the area of law for this court to develop in this case.

The circuit court ruled that the effect of the Decedent's intent to defraud Appellee of her marital rights was that the assets of the Trust would be included in the Estate for the limited purpose of calculating her elective share. Such a ruling leaves the Trust intact for all other purposes. This is a desirable result, we think, because the inter vivos trust may well have accomplished other lawful goals of the Decedent as settlor. This result is therefore consistent with the Arkansas Trust Code and the Arkansas Probate Code. We are of the view that this is the better rule of law than to invalidate the Trust entirely. Accordingly, we hold that once a circuit court determines that a settlor had the intent of depriving his or her spouse of marital-property rights when creating or amending an inter vivos revocable trust, the effect of that intent is to have the trust assets included in the settlor's estate for the limited purpose

18

of calculating the surviving spouse's elective share. The intent to defeat the marital rights or the elective share will not invalidate any other lawful purpose of the trust.

We are confident that we have reached the better rule of law after reviewing the cases from other jurisdictions this court cited, with approval, in *Richards*. In particular, we note the observation made by the Supreme Court of Illinois that "the Missouri cases have held unequivocally that merely because a trust is deemed void as to the widow's right does not necessarily make it void as to the rights of other beneficiaries." *Rose v. St. Louis Union Trust Co.*, 253 N.E.2d 417, 419 (Ill. 1969). We see no reason to call into question the validity of all inter vivos revocable trusts by holding that a settlor's intent to defeat his or her surviving spouse's elective share will invalidate an inter vivos revocable trust entirely. We therefore affirm the circuit court's well-reasoned finding that when a settlor creates an inter vivos revocable trust with the intent to deprive his or her surviving spouse of marital rights to property, then the trust assets will be included in the settlor's probate estate for the limited purpose of calculating the elective share. We so hold.

We have considered Appellant's four arguments for reversal of the circuit court's order, and we cannot say that the circuit was clearly erroneous in any respect. Accordingly, we affirm the order appealed.

BAKER and HART, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority holds that the assets of a revocable trust should be included in a decedent's estate for the purpose of calculating the

elective spousal share. Because this holding is contrary to established Arkansas probate law and will thwart the use of many traditional estate-planning tools, I respectfully dissent.

Dower in personalty is a creature of statute because, at common law, it attached only to real estate. *Stull v. Graham*, 60 Ark. 461, 476, 31 S.W. 46, 50 (1895). Statutes in derogation of the rules of the common law are strictly construed. *Wright v. Wright*, 248 Ark. 105, 108, 449 S.W.2d 952, 953 (1970). Our dower statute relating to personalty provides that if "a person dies leaving a surviving spouse and no children, the surviving spouse shall be endowed . . . of one-half (1/2) of the personal estate, absolutely, and in his or her own right, as against collateral heirs." Ark. Code Ann. § 28-11-307(a)(1) (Repl. 2012). Our election-by-survivor statute provides in part as follows:

> (a) When a married person dies testate as to all or any part of his or her estate, the surviving spouse shall have the right to take against the will if the surviving spouse has been married to the decedent continuously for a period in excess of one (1) year.
> (b) In the event of such an election, the rights of the surviving spouse in the estate of the deceased spouse shall be limited to the following:
> (1) The surviving spouse, if a woman, shall receive dower in the deceased husband's real estate and personal property as if he had died intestate.

Ark. Code Ann. § 28-39-401 (Repl. 2012). Thus, as provided by statute, dower rights are in the estate of the deceased spouse. The right of dower in personal property does not accrue until the decedent's death; the decedent may sell, mortgage, or dispose of property at his pleasure. *McKinney v. Caldwell*, 220 Ark. 775, 778–79, 250 S.W.2d 117, 119 (1952). The surviving spouse's elective interest in the decedent's estate vests immediately upon the spouse's death. *Gregory v. Estate of Gregory*, 315 Ark. 187, 192, 866 S.W.2d 379, 382 (1993). However,

dower can vest only in property that the deceased spouse owned at the time of death. *Id.*, 866 S.W.2d at 382.

The H. Ripley Thompson Revocable Trust, which was created by H. Ripley Thompson with premarital assets, distributed principal and income to him during his lifetime. After his death, the remaining trust assets were to be distributed to others, including $100,000 to Anne Thompson. This comports with Arkansas law. A settlor may create a trust for his own benefit, and the settlor has the power to reserve the right to consume the principal of the trust res or to revoke the trust in whole or in part. *Richards v. Worthen Bank & Trust Co.*, 261 Ark. 890, 892, 552 S.W.2d 228, 230 (1977).

In accordance with the statutes and Arkansas case law, because dower did not vest until the death of H. Ripley Thompson, Anne Thompson did not have an accrued dower interest in the trust personalty prior to his death. Further, in accordance with the statutes and Arkansas law, Anne Thompson did not have a dower interest in the trust personalty at the time of Thompson's death because the trust personalty was not part of Thompson's estate. Thus, the trust personalty was never subject to Anne Thompson's dower interest.

Contrary to our case law and the plain language of the dower statutes, the majority grafts onto our state jurisprudence a new source from which a dower interest can be taken: personalty in which the spouse did not have an accrued dower interest, essentially promulgating into law provisions of the Uniform Probate Code that were not adopted by the General Assembly, creating an "augmented estate" from which the elective share of a surviving spouse may be taken. Unif. Probate Code § 2–205 (1969). Further, in permitting

Thompson, on her claim of fraud, to take an elective share in the trust, the majority states that the "Decedent's intent to deprive Appellee of her marital rights in his property is evident on the face of the Will and Trust documents." Under the majority's conception of the law, *any* transfer of personalty to a person other than the spouse would compel the conclusion that the spouse was defrauded by the transfer and deprived of her marital rights.

The ramifications of this new law are broad and upend the use of familiar tools of estate planning. In creating this new law, the majority permits a surviving spouse to make a fraud claim and to take an elective share not only in trusts, but also in any property or accounts held in pay on death, transfer on death, or co-ownership registration with the right of survivorship, as well as in the proceeds of insurance over which the decedent held an exercisable general power of appointment, all of which are used as estate-planning tools. The confusion to follow this opinion is indeed disturbing.

Finally, the foundation on which the majority builds this new law cannot support its weight. The Arkansas cases relied on by the majority to support its holding are inapposite. In *Richards*, this court disposed of an appellant's claim that a trust was an illusory scheme or device to defeat the appellant's marital rights by concluding that the trust was not a scheme to defraud. The court, however, did not address the more fundamental issue of whether, if fraud had been proved, that would have been a proper basis for invading the trust. Further, another case cited by the majority, *West v. West*, 120 Ark. 500, 179 S.W. 1017 (1915), did not even involve a taking against a will. *West* was a quiet-title action between a divorced

spouse and her former husband's children from a previous marriage, in which the court found that the former husband, prior to their marriage, properly deeded real property to his children.

Because the majority rejects black–letter Arkansas probate law and undercuts well–established methods of estate planning, I respectfully dissent.

BAKER, J., joins in this dissent.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Sam Hilburn, Lauren White Hamilton*, and *Mary Claire McLaurin*, for appellant.

*Richard Mays Law Firm, PLLC*, by: *Richard Mays*; and *Hatfield, Sayre & Brockett*, by: *Richard F. Hatfield*, for appellee.